Richard W. HASBROUCK,
Plaintiff-Appellant,

v.

SHEET METAL WORKERS LOCAL 232, Laborers Local 682, Barbers Local 754, Umatilla Co. Public Employees Local 1393, Meat Cutters Local 143, Culinary Local 536, Pendleton Building Trades Council, Electrical Workers No. 112, Plumbers and Steamfitters No. 598, Musicians Local No. 560, Opeu, Local 11, Retail Clerks Local 1612, Communications Workers, Local 9212, and Pendleton Oregon Labor Council, Defendants-Appellees.

No. 75–3788.

United States Court of Appeals,
Ninth Circuit.

Nov. 20, 1978.

Howard Hedrick (argued), Hedrick, Fellows, McCarthy & Zikes, Portland, Or., for plaintiff-appellant.

Donald S. Richardson (argued), Roger J. Leo (argued), Portland, Or., for defendants-appellees.

Before BROWNING and TANG, Circuit Judges, and TAKASUGI,* District Judge.

TAKASUGI, District Judge.

## FACTS

Plaintiff owns and operates a sheet metal and furnace business in Pendleton, Oregon. He rarely employs any help other than himself. Occasionally he hires part-time help.

Plaintiff applied for union membership in 1960 and 1964. The defendant, Sheet Metal Workers Local 232 (Local 232), rejected plaintiff's application because plaintiff operated his shop without employees. Since that time, according to plaintiff, Local 232 has intimidated building contractors to cease dealing with him. Further, plaintiff claims that the Pendleton Oregon Labor Council, an unincorporated association (Labor Council), of which defendant is a member, placed plaintiff's name on a "Do Not Patronize" list which was published in a local newspaper. These two actions by defendant, plaintiff contends, constitute an unfair labor practice in violation of federal labor law.

Plaintiff filed an action against defendant and several other unions. Plaintiff joined the other unions based upon the acts of their agents on the Labor Council. Plaintiff claimed that defendants violated the secondary boycott provisions of the Labor Management Relations Act by the commission of the alleged unfair labor practices. Further, plaintiff contended that defendants committed the common law torts of defamation and business disparagement.

In response to plaintiff's action, defendants filed motions for summary judgment. The district court granted summary judgment and dismissed the action as to all defendants except Local 232 and the Labor Council. Regarding Local 232 and the Labor Council, the court granted partial summary judgment. The court held that publication of the "Do Not Patronize" list was not actionable; it determined that federal labor law preempted any claim of defamation or business disparagement based under state law; and it also found that federal labor law preempted plaintiff's punitive damages claim. Summary judgment was denied on a statute of limitations argument and a challenge to the court's subject matter jurisdiction.

* Honorable Robert M. Takasugi, United States District Judge for the Central District of California, sitting by designation.

## ISSUES

The court must determine the propriety of the district court's ruling. Such determination requires an examination of the following questions as to the granting of summary judgment:

1. Are the unions represented on the Labor Council liable for actions of the council?

2. Could the publication of plaintiff's name on a "Do Not Patronize" list constitute an unfair labor practice?

3. Does the court have jurisdiction to hear plaintiff's state law claims of defamation and business disparagement and, consequently, to award punitive damages to plaintiff?

## DISCUSSION

### 1. UNION LIABILITY FOR LABOR COUNCIL ACTIONS

Each named defendant union had a representative seated on the Labor Council. Plaintiff claims that principles of agency demand that each union be liable for the Labor Council's acts through its representative. Because the Labor Council placed plaintiff's name on a "Do Not Patronize" list, plaintiff contends that each union must, therefore, be liable for damages resulting from the publication.

In *Laborers and Hod Carriers Local No. 341 v. NLRB*, 564 F.2d 834 (9th Cir. 1977), the Ninth Circuit addressed the question of union liability for the acts of its agents. The court stated that "[c]ommon law agency principles govern . . . therefore, implied or apparent authority is sufficient." *Id.* at 839.

Similarly, in *NLRB v. International Longshoremen's and Warehousemen's Union, Local 10*, 283 F.2d 558 (9th Cir. 1960),

the Ninth Circuit applied common law agency principles to a labor dispute. In this particular case, union stewards fired certain longshoremen. The longshoremen brought an action against the union. The court held that the Union was responsible for the steward's acts:

> "Taft-Hartley rendered common law principles of agency equally applicable to both labor and management groups."

*Id.* at 563.

> "[Only] when an agent performs an act within the general scope of employment but with no intention to further the interests of his principal, the principal is not responsible for the agents's conduct."

*Id.* at 567.

In the instant case, defendants' agents seated on the Labor Council were acting within the scope of their employment and in the interests of the union which they represented. Thus, defendants are potentially liable under the law. However, an examination of the legal principles governing the Labor Council's purported illegal acts indicates that the lower court properly granted summary judgment because the Labor Council acted within the scope of the law.

### 2. "DO NOT PATRONIZE" LISTING AS AN UNFAIR LABOR PRACTICE

Plaintiff claims that the Labor Council's inclusion of plaintiff's shop on the "Do Not Patronize" list constituted a violation of section 8(b)(4) of the National Labor Relations Act, 29 U.S.C. § 158(b)(4), for which damages are available under section 303 of the Act, 29 U.S.C. § 187.

Plaintiff concedes that the listing would be protected under the publicity proviso to section 8(b)(4)[1] if a labor dispute existed

---

1. The proviso to section 8(b)(4) states:

   Nothing contained in such paragraph shall be construed to prohibit *publicity*, other than picketing, for the purpose of *truthfully* advising the public, including consumers and members of a labor organization, that a product or products are produced by an *employer* with whom the labor organization has a *primary dispute* and are distributed by another employer, as long as such publicity does not have an effect of inducing any individual employed by any person other than the primary employer in the course of his employment to refuse to pick up, deliver, or transport any goods, or not to perform any services, at the establishment of the employer engaged in such distribution . . . .

between him and Local 232. To avoid this result, he contends that there was no labor dispute. He argues that "Do Not Patronize" lists imply the presence of a dispute between the union and those listed; that that implication in this case was false; and thus that the list was neither "truthful" publicity nor connected to a "primary dispute" as required by the proviso.

We disagree. There is no doubt on this record that plaintiff and Local 232 were engaged in a primary labor dispute. There was a history of discussion between both sides regarding the employment situation in plaintiff's furnace shop. Local 232 sought to persuade plaintiff to hire union members. When he did not, the union resorted to the "Do Not Patronize" advertisement. Under the broad statutory definition,[2] this was a "labor dispute" as a matter of law.[3]

■■■ Plaintiff makes much of one exchange in the depositions in which the union business agent concedes that Local 232 had no dispute with plaintiff. Read in context, the concession is more ambiguous than plaintiff would allow. More important, whether a labor dispute existed is a question of law which the court must answer from the whole record. The union officer's opinion in a deposition is not conclusive on the issue.

■■■ Because a primary labor dispute did exist between plaintiff and Local 232, the "Do Not Patronize" advertisement contained no express or implied falsehoods. It therefore came within the protection of the publicity proviso. Thus it was not an unfair labor practice under section 8(b)(4) and could not give rise to a cause of action under section 303.

### 3. OREGON DEFAMATION AND BUSINESS DISPARAGEMENT CLAIMS

Plaintiff also asserts as pendent to his section 303 action, claims of defamation and business disparagement under Oregon law.

■■■ Insofar as these claims are grounded on the publication of the "Do Not Patronize" list, federal labor law preempts them. Falsity is a *sine qua non* for the maintenance of state defamation or disparagement actions in the labor field. *Old Dominion Branch No. 496, National Assn. of Letter Carriers v. Austin,* 418 U.S. 264, 283–84, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974). Circulating the name of plaintiff's shop on the "Do Not Patronize" list involved no express false statement. Nor was its implication that a labor dispute existed false or misleading.

■■■ Insofar as plaintiff's defamation and disparagement claims rest on Local 232's alleged intimidation of Pendleton area building contractors, they are before this court prematurely. Summary judgment was denied on plaintiff's section 8(b)(4) claim arising out of that alleged conduct. The state law claims, to the extent they rely on that conduct, represent only alternate legal theories based on a set of facts common to the federal claim. As such, they do not constitute separate "claims" for which certification under Fed.R.Civ.P. 54(b) is appropriate. *See CMAX Inc. v. Drewry Photocolor Corp.,* 295 F.2d 695, 697 (9th Cir. 1961). We therefore do not reach the preemption question with respect to the application of Oregon Law to the portion of the case still pending below.

---

29 U.S.C. § 158(b) (emphasis added).
Plaintiff also concedes that the list would enjoy First Amendment protection if a labor dispute existed.

**2.** 29 U.S.C. § 152(9) defines a "labor dispute" as

any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of em-

ployment, regardless of whether the disputants stand in the proximate relation of employer and employee.

**3.** Rarely have courts found concerted union activity to fall outside this broad definition. Where the union acts for some arguably job-related reason and not out of pure social or political concerns, a "labor dispute" exists. *See Mountain Navigation Co. v. Seafarers,* 348 F.Supp. 1298, 1302–3 (D.Wis.1971), and cases discussed therein.

### 4. CONCLUSION

Against the Labor Council and each union except Local 232, plaintiff's suit rested entirely on the publication of the "Do Not Patronize" list. That activity was protected from federal liability by the publicity proviso and from state liability by federal preemption of state remedies. The district court acted properly in granting summary judgment in these defendants' favor and in dismissing them from the action.

Against Local 232, plaintiff alleged the publication of the "Do Not Patronize" list and, in addition, earlier acts of intimidation against plaintiff's customers. The district court treated these as two independent causes of action and granted summary judgment for Local 232 with respect to the list. This too was proper.

AFFIRMED.