AARCO, INC. vs. ROBERT W. BAYNES & another.[1]

Middlesex.   December 8, 1983. — March 29, 1984.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Labor,* Federal preemption. *Libel and Slander. Jurisdiction,* Labor case.
*Unlawful Interference. Words,* "Labor dispute."

Allegedly libelous letters written on behalf of a labor union by its business
   manager to the director of the public facilities department of the city of
   Boston objecting to the plaintiff, a nonunion contractor and the low
   bidder on the unawarded contracts for work on certain public buildings,
   were, in the circumstances, made in the context of a "labor dispute,"
   within the contemplation of 29 U.S.C. § 152 (9) (1976), and therefore
   were governed by Federal labor law, with the result that where the record
   in a libel action by the contractor revealed no dispute of material fact
   on the question of the actual malice of either the union or its business
   manager, summary judgment for the defendants was properly allowed.
   [562-565]
Summary judgment for the defendants should not have been allowed on a
   claim for interference with advantageous relationships, the essence of
   which was that the defendants, a labor union and its business manager,
   had engaged in an unfair labor practice, as defined in 29 U.S.C. § 158
   (b) (1976), by threatening to picket the city of Boston if it awarded
   certain contracts to the plaintiff, a nonunion contractor, where, on the
   record before it, this court was unable to conclude that there was no
   dispute as to a material fact. [565-566]

CIVIL ACTION commenced in the Superior Court on May
18, 1978.

The case was heard by *Zobel,* J., on a motion for summary
judgment.

---

[1] The other defendant involved in this appeal is the Pipefitters Association,
Local 537, of the United Association of Journeymen and Apprentices of
the Pipefitting and Refrigeration Industry of the United States and Canada,
which we shall refer to as the union. We shall refer to Baynes and the union
as the defendants.

   The defendants not involved in this appeal are Stephen E. Perkins and
Johnson Controls, Inc.

The Supreme Judicial Court granted a request for direct appellate review.

*Jonathan Sauer* for the plaintiff.

*Louis A. Guidry* for the defendants.

*Evan T. Lawson, Howard J. Wayne & Debra Chervinsky,* for Stephen Perkins & another, amici curiae, submitted a brief.

WILKINS, J. The plaintiff (Aarco) appeals from a separate judgment, pursuant to Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974), entered following allowance of the defendants' motion for summary judgment. Aarco's complaint alleged that the defendants had libeled Aarco and had intentionally interfered with advantageous relationships. The claims are based on two letters written by Baynes on behalf of the union as its business manager to the director of the public facilities department of the city of Boston objecting to Aarco, a nonunion contractor and the low bidder on then unawarded contracts for work on certain public buildings.

The motion judge concluded that the letters were written in the context of a labor dispute and that, on the record properly before him on the motion for summary judgment, there was no issue of material fact. He allowed summary judgment for the defendants. We agree with the allowance of summary judgment on the libel claims but disagree with the allowance of summary judgment on the claims based on alleged interference with advantageous relationships.

On August 10, 1977, Baynes wrote to the director of the public facilities department of the city of Boston protesting any award to Aarco as the low bidder "on three recent contracts your department has put out." Baynes wrote that Aarco's employees "cannot work in harmony with all other elements of labor employees on the work site," adding that if "his bid is not rejected we plan to publicize this fact by various means, including picketing." Baynes further protested against Aarco because the union did not believe "they [Aarco] can supply the experienced and qualified Minorities that your contract[s] call for." Finally, in language set forth in the margin,[2] Baynes

---

[2] "A third reason we wish to protest AARCO, Inc. is the way he has conducted his business thru the years. He has gone into bankruptcy several times

challenged Aarco on the basis of the way "he has conducted his business thru the years." The reference to Aarco in the masculine first person singular is based on the undisputed fact that one David P. Cacciola (Cacciola), who had operated other corporations in the same business field as Aarco, was a principal of Aarco. The city rebid the contracts referred to in the August, 1977, letter, and Johnson Controls, Inc., was awarded the contracts. On April 25, 1978, Baynes wrote another letter, in substantially the same form, protesting against Aarco, the low bidder on certain other Boston public building projects. The contracts on these projects were also rebid, and Johnson Controls, Inc., was awarded the contracts.

1. The Supreme Court of the United States has concluded that to effectuate Federal policies, such as those expressed in the National Labor Relations Act (29 U.S.C. §§ 141 et seq. [1976]), Federal law preempts State libel law in the context of a labor dispute so as to require the plaintiff to prove "actual malice," as defined in *New York Times Co.* v. *Sullivan,* 376 U.S. 254, 279-280 (1964). See *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers* v. *Austin,* 418 U.S. 264, 281 (1974) (*Austin*); *Linn* v. *United Plant Guard Workers, Local 114,* 383 U.S. 53, 64-65 (1966).

The first question is whether the defendants' letters were sent in the context of a labor dispute. The National Labor Relations Act (29 U.S.C. § 152[9] [1976]) defines a labor dispute to include "any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, *regardless of whether the disputants stand in the proximate relation of employer and employee*" (emphasis added). The partial preemption of State libel remedies depends "on whether the defamatory publication is made in a context where the policies of

and hurt not only his employees (our members Pension Health and Welfare payments) but also supply houses, subcontractors, and the customers he had.

"In recent years he has gone out of business as (1) Allied Heating, (2) Allied Air Conditioning, (3) Monarch Sheetmetal, (4) Kent Construction and several other companies."

the federal labor laws leading to protection for freedom of speech are signficantly implicated." *Austin,* 418 U.S. at 279. We recently stated that "[t]he term 'labor dispute' should be broadly and liberally construed." *Tosti* v. *Ayik,* 386 Mass. 721, 723 (1982).

The defendants' allegedly libelous letters were sent in the context of a labor dispute. The issue does not turn on whether the defendants' actions were lawful. *NLRB* v. *Washington Aluminum Co.,* 370 U.S. 9, 16 & n.12 (1962). Moreover, as the statutory definition states, the presence of a labor dispute does not depend on the existence of an employer-employee relationship. Nor does it depend on whether the union is seeking to organize an employer. See *Hasbrouck* v. *Sheet Metal Workers Local 232,* 586 F.2d 691, 694 & n.3 (9th Cir. 1978). The obvious goal of the letters at issue here was to secure employment for union members. Job-related, economic pressure of this general character has been held to involve a labor dispute. See *Soft Drink Workers Union Local 812* v. *NLRB,* 657 F.2d 1252, 1258 & n.11 (D.C. Cir. 1980); *Hasbrouck* v. *Sheet Metal Workers Local 232, supra; NLRB* v. *Twin City Carpenters Dist. Council,* 422 F.2d 309, 312-313 (8th Cir. 1970).[3]

We come then to the question whether, on what was before the motion judge, there was a dispute as to the material fact, essential to proof of the plaintiff's libel claim, whether the defendants made any statement "with 'actual malice' — that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co.* v. *Sullivan,* 376 U.S. 254, 279-280 (1964). *Tosti* v. *Ayik,* 386 Mass. 721, 723 (1982). In this case, as is no doubt often true in similar libel

---

[3] A union picketing or boycotting a business which it has not tried to organize (and in some cases cannot organize) nevertheless involves a labor dispute. See *Jones* v. *Demoulas Super Mkts., Inc.,* 364 Mass. 726, 731-733 (1974) (union picketing of store selling nonunion produce); *Jacksonville Bulk Terminals, Inc.* v. *International Longshoremen's Ass'n,* 457 U.S. 702, 711-712 (1982) (union's refusal to handle cargo to or from U.S.S.R.); *Marine Cooks & Stewards* v. *Panama S.S. Co.,* 362 U.S. 365, 370 (1960) (union picketing of foreign-registered ships employing foreign crews); *Mountain Navigation Co.* v. *Seafarers' Int'l Union,* 348 F. Supp. 1298, 1303 (W.D. Wis. 1971) (union picketing of foreign ships).

cases, there is no direct evidence that either defendant knew any allegedly libelous statement was false or that either defendant admitted to facts that would warrant a conclusion that he or it acted in reckless disregard of whether the statement was false or not. The question is whether on the record in this case, viewed most favorably to Aarco, a jury could reasonably have inferred the existence of actual malice, as defined in *New York Times Co.* v. *Sullivan, supra.* See *National Ass'n of Gov't Employees, Inc.* v. *Central Broadcasting Corp.,* 379 Mass. 220, 231 (1979), cert. denied, 446 U.S. 935 (1980). The issue, even though it involves a determination of a state of mind, is not automatically a jury question. *Id.* The possibility of reasonable inferences of malice, however, may be based on the circumstances, even if a defendant testifies or otherwise protests his good faith. See *St. Amant* v. *Thompson,* 390 U.S. 727, 732 (1968).

The circumstances presented in the material before the motion judge do not warrant the drawing of the inference that either defendant acted with actual malice. We are concerned with a subjective matter — "knowledge" or "reckless disregard." See *National Ass'n of Gov't Employees, Inc.* v. *Central Broadcasting Corp., supra; Stone* v. *Essex County Newspapers, Inc.,* 367 Mass. 849, 867-868 (1975). The plaintiff's brief, arguing that actual malice was a jury question, does not analyze and discuss any evidence which was before the motion judge from which an inference of actual malice might be drawn. The only portion of the letters which could be defamatory — that is false, libelous, and not an expression of opinion — is that portion that characterizes the prior business conduct of Aarco. Here, it is clear that the reference to Aarco was directed toward the prior business conduct of its principal supervisor and superintendent, Cacciola. At the most, the record would support a finding of negligence in imputing Cacciola's business history to Aarco. There is no factual showing of purposeful fabrication, obvious reasons to doubt the veracity of sources of information, or the inherent improbability of the statements made. See *St. Amant* v. *Thompson,* 390 U.S. 727, 732 (1968); *Steaks Unlimited, Inc.* v. *Deaner,* 623 F.2d 264, 276-277 (3d Cir. 1980). Cf. *Lyons* v. *New Mass Media, Inc.,* 390 Mass. 51, 57-58 (1983). The record

shows that Baynes had had personal involvement through the union with problems arising out of Cacciola's prior business conduct and could have reasonably inferred that Aarco was another corporate form of convenience for Cacciola. We agree with the motion judge that there was nothing before him from which it could be concluded that there was a dispute of material fact on the question of the actual malice of either defendant. Summary judgment for the defendants was properly allowed on Aarco's libel claims.

2. Aarco's claims based on the defendants' alleged unlawful interference with advantageous relationships rests on grounds independent of the defendants' alleged libels. The counts for unlawful interference with advantageous relationships are based on the threats made in the letters to the director of the public facilities department that the defendants would engage in picketing if the city awarded certain contracts to the plaintiff. Because these claims are not based solely, if at all, on the alleged libels, we regard as inapplicable to this case the reasoning of *Tosti* v. *Ayik*, 386 Mass. 721, 728-729 (1982), where a claim of unlawful interference with employment was conditioned on the successful maintenance of libel claims.

We see no basis for concluding that, under decisions of the Supreme Court of the United States, malice is an essential requirement for the maintenance of a claim based on unlawful interference with an advantageous relationship in circumstances involving a labor dispute. The United States Supreme Court has stated that the process of determining whether Federal law preempts local tort law in the area of labor-management relations affecting interstate commerce requires "a sensitive balancing of any harm to the regulatory scheme established by Congress . . . and the importance of the asserted cause of action to the State as a protection to its citizens." *Local 926, Int'l Union of Operating Eng'rs* v. *Jones,* 460 U.S. 669, 676 (1983). See *Farmer* v. *United Bhd. of Carpenters & Joiners, Local 25,* 430 U.S. 290, 295-296 (1977); *San Diego Bldg. Trades Council* v. *Garmon,* 359 U.S. 236, 244 (1959). Where, however, Congress has expressly permitted a private cause of action in a State court for injuries resulting from unfair labor practices,

as defined in 29 U.S.C. § 158(b) (1976) (see 29 U.S.C. § 187[b] [1976]). Aarco's claims of unlawful interference must be judged by the standards applicable under this Federal law.

The essence of Aarco's claim is that the defendants engaged in unfair labor practices as defined in 29 U.S.C. § 158(b) (1976). See *Charles D. Bonanno Linen Serv., Inc.* v. *McCarthy,* 708 F.2d 1, 3-5 (1st Cir.), cert. denied, 464 U.S. 936 (1983); *Collier* v. *Operating Eng'rs Local Union No. 101,* 228 Kan. 52, 61-62 (1980). On this record we are unable to conclude that there is no dispute as to a material fact on the claim of unlawful interference with advantageous relationships. The defendants argue that they were privileged to write the letters threatening picketing and presumably, by implication, they would argue that that threat was not an unfair labor practice entitling the plaintiff to relief. These questions cannot be properly resolved in the defendants' favor on this record. See *Charles D. Bonanno Linen Serv., Inc.* v. *McCarthy, supra* at 4-5; *Collier* v. *Operating Eng'rs Local Union No. 101, supra* at 59-61. Consequently, summary judgment should not have been granted on the counts alleging that the defendants interfered with advantageous relationships.

3. We affirm the granting of summary judgment for the defendants on the libel counts. We vacate the award of summary judgment for the defendants on the counts alleging that the defendants unlawfully interfered with advantageous relationships.

*So ordered.*