Smith, J.
The plaintiff Sheraton Boston Corporation (“the Sheraton”) brought this complaint against Dome-nic Bozzotto individually and as president of the Hotel, Restaurant, Institutional Employees and Bartenders Union AFL-CIO, Local 26 (“the Union”), and against the Union, alleging abuse of process and malicious *322 defamation. The matter is before the court on the defendants’ motion for summary judgment. For reasons stated, the motion is denied as to the claim for abuse of process, and denied as to the claim for malicious defamation.
BACKGROUND
For the purposes of this motion, the following facts are undisputed:[3]
The Sheraton operates a hotel in Boston. In March and April of 1991, the Sheraton established a covert video surveillance operation in order to confirm and eliminate the distribution of controlled substances on hotel premises. A covert video camera was set up in a men’s locker room used by hotel employees. This surveillance camera recorded approximately 576 hours of activities taking place in one corner of the locker room, including men studying, resting, and changing clothes, and one apparent drug transaction.
Additionally, in 1990 and 1991, the Sheraton conducted other covert video surveillances. These included surveillance from November 5 to November 26, 1990 of a cash register at the Edible Express, a coffee shop in the hotel, in order to investigate unaccounted-for shortages in receipts; surveillance of a restaurant cash register in March 1991, to account for unexplained cash shortages; and surveillance from September 16 to October 7, 1991, of an area around a liquor cabinet in the kitchen of a bar called the Towers Lounge to investigate the service of adulterated drinks.
In September or October of 1991, Lynda Kerns, a hotel employee and a Union member, found a videocassette on a shelf in the kitchen of the Towers Lounge. She took the video home and viewed it, and discovered that it contained film of male employees changing their clothes without knowing they were being recorded. In fact, this video was one of those used by the Sheraton for surveillance of the men’s locker room. Kerns told Beth Ann Hyland-Babaie, another employee, about the tape.
Hyland-Babaie told Kerns that there had been a meeting of hotel managers in a nearby room the day before Kerns found the tape. However, Ms. Hyland-Babaie did not see or hear anyone listening to the videotape at the meeting of the hotel managers.
In or around February 1992, Kerns called Bozzotto, the president of the Union, and told him about the tape. Kerns told Bozzotto that she had found the cassette in the kitchen and that she believed it came from a meeting where managers reviewed it. Bozzotto did not inquire how Kerns knew that managers had watched the tape. Kerns brought the tape to Bozzotto, and he viewed it.
In June 1992, Robert Morse became General Manager of the hotel. By July, Morse had begun to aggressively address with the Union labor practices and interpretations of the Collective Bargaining Agreement that Morse considered to be lax and incorrect and inconsistent with good management and efficient labor practices. Morse’s management and insistence upon changes in certain practices were met by Union officers with hostility and an adversarial attitude.
In August of 1992, Bozzotto arranged to meet with attorney Goldstein and Kerns and all three viewed the videotape. A few days later, Bozzotto invited to his office and reviewed the videotape with Franklin Etienne and Jean Clement, two hotel employees who were shown on the tape reading books and studying. Neither Etienne nor Clement are native English speakers. Bozzotto told them that he thought secret videotaping of people in the locker room was a violation of the workers’ civil rights. He suggested that they speak with the Union lawyers and told them that they could bring a lawsuit. Later, he accompanied Etienne to attorney Lee Goldstein’s office. Clement met with Goldstein on a separate occasion. A fee agreement was arranged between with Goldstein, Etienne, Clement, and the Union whereby the Union would pay attorneys fees and costs associated with bringing suit, and would be reimbursed by up to one third of any damage awards.[4]
In February 1993, a lawsuit alleging claims arising from the videotaping was filed, with Clement and Etienne as plaintiffs. The complaint asserted, among other things, that on information and belief the video was viewed by a meeting of managers of the Sheraton, and that the contents of the video constituted a wire or oral communication which was knowingly and willfully intercepted, disclosed, and used by the Sheraton in violation of G.L.c. 272, §99C and Q. Bozzotto saw and reviewed the complaint before it was filed. Clement and Etienne had not seen the complaint before it was tiled. Moreover, neither knew of the filing of the complaint until they heard about the filing over the news media on the date of the tiling. Clement testified at a deposition, however, that the content of the complaint had been explained to him, and Etienne testified that he had given permission to his lawyer to file the complaint on his behalf. However, Bozzotto, and not Clement and Etienne, actively participated in advancing the litigation. The Sheraton alleges that Bozzotto and the Union caused process to issue in that suit, and that they did so for ulterior motives.
For several weeks following the filing of the complaint, Bozzotto and Goldstein were widely quoted in local and national print and broadcast media about the allegations contained therein. These statements are the basis for the defamation claim.
The Boston Globe quoted Bozzotto as saying, “We think there was an audio part to this [surveillance] which clearly is a violation of the wire tapping laws.” The Boston Herald quoted Bozzotto as saying, “We are convinced [the surveillance] was in both male and female locker rooms.” Bozzotto appeared on the news show for WHDH-TV (CBS) and said, “We’re convinced, again, that they were in all of the locker rooms: ladies *323 and womens [sic], because we’ve heard the rumors.” Goldstein also referred to surveillance in women’s locker rooms in a Boston Globe article, in which he also stated that the union had waited several months before filing the lawsuit in order to make sure the information they had received was correct. The Boston Herald quoted Goldstein as asking, “How would you like to be photographed in the bathroom at your workplace?” Goldstein was also quoted on a television news show as saying, “How would you like your workplace to have a camera in the bathroom recording you when you’re alone? I think its an outrageous act by the Sheraton.” He made similar statements on another television news show. Bozzotto stated on yet another television news broadcast, “We’re convinced that at one time there was a group of management people in the conference room looking at a large range of tapes, and this tape was left behind by mistake, obviously.” Other television news shows quoted him making similar statements. Bozzotto and Goldstein made numerous other assertions to the media.
Prior to making these statements, Bozzotto had generally inquired of Sheraton management about the surveillance, but did not receive any reply. He did not investigate whether audio recordings had been made by the Sheraton. He had not received any information that taping had occurred in women’s locker rooms. Except for viewing the tape and speaking with Bozzotto and one of his employees and with Kerns, Etienne, and Clement, Goldstein had conducted no investigation prior to making his statements to the press. He had no knowledge that the Sheraton had videotaped bathroom areas.
As a result of these statements, the Sheraton has suffered damages due to time spent by personnel in dealing with the allegations; attrition of sales and advance bookings; a drop in market share; and a decrease in employee morale resulting in lower customer satisfaction.
The Sheraton brought a complaint alleging that Bozzotto and the Union abused process and engaged in malicious defamation. Bozzotto and the Union have responded with this motion for summary judgment.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact in dispute and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat ‘l Bank v. Dawes, 369 Mass. 500, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805 (1991), accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “Ifthe moving party establishes the absence of triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, supra 404 Mass. at 17. “[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgement.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
1. Count I: Abuse Of Process
To prevail on an abuse of process claim, a plaintiff must prove that judicial process was used to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed. Datacomm Interface, Inc. v. Computerworld, Inc.; Adelson, 396 Mass. 760, 775 (1986). The essential elements of such a claim are “(1) ‘process’ was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage.” Id. at 775-76. See also Beecy v. Pucciarelli 387 Mass. 589, 595 (1982). Bringing a complaint that contains knowing misrepresentations and using the action as a marketing tool constitutes abuse of process. Datacomm Interface, Inc. v. Computerworld, Inc.; Adelson, supra at 776.
In this case, the Sheraton has submitted ample evidence from which a jury could infer that Bozzotto strongly encouraged and orchestrated the lawsuit against the Sheraton in order to retaliate against hotel management for attempting to implement new policies. The Sheraton has offered no evidence, however, from which a jury could find that Etienne and Clement, the actual plaintiffs in the action, brought the suit because of any illicit motive or that Etienne and Clement did not consent to the lawsuit brought in their name.
The novel issue presented by these facts is whether a person can be held liable for abuse of process if he procures the initiation of a court proceeding by a third party in order to effectuate his ulterior or illegitimate purpose. The Sheraton has offered no Massachusetts statute or case law that would allow a non-party to a suit to be held liable in such circumstances nor have the defendants pointed to any Massachusetts case or statute which stands for the opposite proposition. However, Sheraton cited to a New York decision which indicates that, at least in New York, the tort will lie against someone who uses a third party to initiate the abusive law suit. See Alexander v. Unification Church Of America, 634 F.2d 673, 678 (2nd Cir. 1980) (“The New York courts appear to proceed on the reasonable assumption that a person is liable for abuse of process, as he would be liable for malicious prosecution, if he *324 procures the initiation of a proceeding by a third party”) (citations omitted). While not controlling on this court, the reasoning of the Alexander court is compelling. The evil that the tort addresses is the misuse or perversion of lawful process in order to achieve an ulterior motive. Whether the abuser personally commences the legal action or uses a willing third person, the evil is the same. The evil is the same even if the abuser manipulates or dupes the third party into commencing the legal process, as appears to be the situation in this case. The claims of Sheraton, if true, tell a story of manipulation of two unsophisticated hotel workers by the president of their union and by the union’s attorney to commence a law suit in order to gain an advantage over Sheraton. The fact that a person is cunning enough to use another person’s lawful process to gain an ulterior motive should not protect that person from liability for the abuse of process which he committed.
Thus, the Court finds that the plaintiff has raised an arguable claim for abuse of process and that the plaintiffs submissions provide ample factual support. The issue of the defendants’ motives is a factual issue for the jury. Accordingly, the Court denies summary judgment on Count I of the complaint.
2. Count II: Malicious Defamation
A statement is defamatory if, in the circumstances, it discredits the plaintiff “in the minds of any considerable and respectable segment in the community.” Draghetti v. Chmielewski, 416 Mass. 808, 811 (1994). A statement about a corporation may be defamatory if it attacks the corporation in its method of conducting affairs, accuses it of fraud or mismanagement, or attacks its financial position. Grande & Son, Inc. v. Chace, 333 Mass. 166, 169 (1955).
In a defamation action, the court must examine the statement in its totality in the context in which it was uttered or published to determine whether it can be understood reasonably as fact or opinion. Fleming v. Benzaquin, 390 Mass. 175, 180 (1983). Where the allegedly libelous remarks could have been understood as either fact or opinion, the issue must be left to the jury’s determination. Lyons v. New Mass Media, Inc., 390 Mass. 51, 59 (1983). Statements of opinion based upon disclosed or assumed nondefamatory facts are not actionable. Fleming v. Benzaquin, supra at 187. Opinions apparently based on undisclosed defamatory facts may be actionable. Id.
To prevail in an action arising from a labor dispute, the plaintiff must prove actual malice. Aarco, Inc. v. Baynes, 391 Mass. 560, 562 (1984). A labor dispute includes any controversy concerning the terms or conditions of employment. Id. Actual malice requires knowledge that a statement is false or reckless disregard of whether or not it is false. Id. at 563. The test for malice is subjective, and a plaintiff must prove that the defendant entertained serious doubts about the veracity of the statements. Lyons v. New Mass Media, Inc., supra at 57. A jury may infer malice from the circumstances, however, even if a defendant testifies or otherwise protests his good faith. Aarco, Inc. v. Baynes, supra at 564. The Supreme Judicial Court has upheld the granting of summary judgment to the defendant where there was no factual showing of purposeful fabrication, obvious reasons to doubt the veracity of sources of information, or the inherent improbability of the statements made. Id. at 564-65.
In this case, a jury could find that the statements made by Goldstein as an agent of the Union and by Bozzotto defamed the Sheraton. Bozzotto and Goldst-ein claimed, among other things, that the Sheraton violated the law by making audio recordings and that the Sheraton videotaped workers in the women’s locker room and in bathrooms. They also accused a management team of viewing the video. These statements implicate the Sheraton’s method of conducting its affairs and could discredit it in the minds of a considerable and respectable segment of the community.
A jury could also find that the assertions of Bozzotto and Goldstein were false statements of fact or that they were statements of opinion based on undisclosed false and defamatory facts. The statements were given to the press in the context of the lawsuit filed against the Sheraton. An audience could logically assume that such litigation was filed after the Union had researched the underlying circumstances, and in at least one interview Goldstein claimed to have done just that. In this situation, statements such as “We think there was an audio part to [the surveillance],” “We are convinced [the surveillance] was in both male and female locker rooms,” “How would you like to photographed in the bathroom at your workplace?" and “We’re convinced that at one time there was a group of management people in the conference room looking at a large range of tapes” could be easily interpreted as representations based upon research and not mere opinion or hyperbole.
A jury could also find that at least some of the statements were made with actual malice. A jury could believe that Bozzotto and Goldstein made the statements in order to retaliate against Sheraton management for attempting to change long-standing policies and interpretations of the collective bargaining agreement, that they made the statements about audio surveillance, filming of bathrooms and women’s locker rooms, and other events without any evidence whatsoever that these activities occurred, and that they were thus made with reckless disregard for the truth.®
Finally, ajury could find that the Sheraton suffered damages in the form of loss of business and employee time as a result of the statements made by Bozzotto and Goldstein.
As the Sheraton has put forth sufficient evidence on each element in its claim for malicious defamation, *325 summary judgment is denied on Count II of the complaint.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendants’ Motion For Summary Judgment is DENIED as to Count I and as to Count II of the complaint.

In their memoranda the parties dispute the details of many facts both relevant and irrelevant. In keeping with the standards for summary judgment, I accept as true all facts and inferences favorable to the plaintiffs that are supported by admissible evidence.

The Sheraton submitted deposition testimony by Clement and Etienne in which they testified that they understood they might have to reimburse the Union for up to 100% of any damage awards. This understanding, however, contradicts the plain language of the fee contract signed by them.

The Sheraton did not submit any evidence showing that the defendants did not have a good faith belief, based on information given to them by Kerns, that a management team viewed the video. Although a jury might find this belief to be negligent, it did not reach the standard of malice.