Volterra, J.
The Executive Board of Local 403 of the International Brotherhood of Police Officers (Union), brought this action in tort for defamation against defendant John Barrett, III, for statements defendant allegedly made in his capacity as Mayor of the City of North Adams. Plaintiff claimed that defendant’s words were false and defamatory and may have discredited the reputation of the Union. Plaintiff sought money damages against defendant.
This matter is now before the Court on defendant’s motion for summary judgment pursuant to Mass.R.Civ.P. 56. Upon review of the entire record, this Court rules that defendant’s motion for summary judgment be allowed.
A. Motion to Dismiss. Prior to filing this motion for summary judgment, defendant moved to dismiss plaintiffs complaint pursuant to Mass.R.Civ.P. 12(b)(6), maintaining that plaintiff is a government entity and as such is barred from bringing suit for defamation as a matter of law. Although defendant’s motion to dismiss was denied, his argument was not without merit and deserves brief mention. [1]
The issue of whether an unincorporated association of police officers qualifies as a governmental body which does not have the capacity to sue for defamation was decided affirmatively in Edgartown Police Patrolmen's Ass'n v. Johnson, 522 F.Supp. 1149, 1152 (D.Mass 1981) (association of police officers could not maintain libel action against individual alleged to have made defamatory statements against unidentified police officers; summary judgment entered for defendant).
Citing the United States Supreme Court’s decision in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the Edgartown Court stated: “Public debate must not be inhibited by the threat that one who speaks out on social or political issues may be sued by the very governmental authority which he criticizes . . . Regardless of the truth or falsity of the defendant’s statements when she accused the police of corrupt activities, the defendant’s motion for summary judgment must be allowed and the plaintiffs’ two claims must be dismissed.” Edgartown Police Patrolmen’s Ass’n at 1152-53.
Thus arguably the defendant’s motion to dismiss may have been dispositive of the issue. This Court chooses, however, to address the issues now raised by defendant’s motion for summary judgment.
B. Motion for Summary Judgment. Defendant’s motion for summary judgment rests on the following theories: [1] there are no genuine issues of material fact and defendant is entitled to judgment as a matter of law; [2] plaintiff bears the burden of proving actual malice since defendant’s allegedly defamatory statements concern a public figure, were made in the context of labor disputes, and are protected by an absolute or at least conditional privilege; and [3] the statements allegedly attributed to the defendant do not constitute actual malice and were not defamatory as a matter of law. Each of these arguments are discussed in turn.
[ 1 ] There are no genuine issues of material fact. To support a motion for summary judgment in a libel suit, the moving party, in this case defendant, is required to establish that on the undisputed evidence brought forward, considered with indulgence in plaintiffs favor, a jury could not have reasonably concluded that plaintiff had proved by clear and convincing evidence that defendant issued the alleged statements with knowledge that they were false or with reckless disregard for their veracity. National Ass'n of Gov’t Employees, Inc. v. Central Broadcasters Corp., 379 Mass. 220, 231, 396 N.E.2d 996 (1979). The Supreme Judicial Court has stated that it favors the use of summary judgment procedures in cases where defamation is alleged. Mulgrew v. City of Taunton, 574 N.E.2d 389, 410 Mass. 631, 632 (1991), quoting King v. Globe Newspaper Co., 400 Mass. 705, 708, 512 N.E.2d 241 (1987). Defendant, however must still meet the usual burden under Mass.R.Civ.P. 56 of demonstrating the absence of disputed material facts. Godbout v. Cousens, 396 Mass. 254, 258, 485 N.E.2d 940 (1985).
The facts underlying this case are undisputed. During the period from March to October, 1995, a series of articles appeared in the North Adams Transcript and the Berkshire Eagle concerning ongoing labor and contract disputes between defendant, then the Mayor of North Adams, and plaintiff, the executive Board of the local police union. Plaintiffs complaint is premised on the following seven separate instances of alleged defamation.
[i] On March 18, 1995, the North Adams Transcript published an article under the headline, POLICE, MAYOR AT ODDS OVER NEW CONTRACT. The article outlined certain aspects of the contract proposals, such as the Union’s demand for salaiy increases and the Mayor’s demand for concessions. In a discussion of the ongoing feud between police union President Ronald Ciepela (“Ciepela”) and defendant, the article quotes Ciepela as saying; “Because there are a lot of union guys over here, he thinks we’re all bad cops. We are not.” The article continues: “But Barrett alleged union leadership is engaging in intimidation tactics, such as possible vandalism to some police officer’s *214 personal cars by other cops, confrontations and veiled threats.” Plaintiff asserts that defendant’s allegation is false and defamatory.
[ii] On April 1, 1995, the front page headline of the Transcript read, BARRETT LAMBASTES UNION CHIEFS. The accompanying article focused largely on a March 15 letter sent by the Union to the City accusing the City of North Adams Detective Bureau as well as the Administration of the Police Department with negligently failing to inform local police officers that a murder suspect, who was subsequently arrested, was living in the City of North Adams. The article began: “Mayor John Barrett III promised an investigation and action be taken against four union executive board police officers he says have ‘fractured’ and ‘irreparably’ damaged and divided the 28-member police department.” Plaintiff asserts that defendant’s promises were false and that his accusations were defamatory.
[iii] On April 1, 1995, the Berkshire Eagle also reported on plaintiffs letter to the City of North Adams. Plaintiff contends that in this article defendant accusingly suggested that the Union was intimidating average citizens. Defendant’s allegedly defamatory statement was as follows: “If [the union and this leadership] can try to intimidate [fellow police officers], and if they can try to intimidate the mayor and the public safety commissioner of this city, what are they doing with the average citizen?"
[iv] On July 13, 1995, the North Adams Transcript printed an article under the headline, OFFICER DEFIES MAYOR BARRETT, is suspended. According to plaintiff, this article included yet another defamatory statement by defendant, who is quoted as saying, “It’s just that they (pro-union officers) believe they do not have to follow the rules and regulations of the North Adams Police Department and its operation. They believe they are above it and can do whatever they want.” Defendant allegedly made this statement with regard to his suspension of a North Adams City patrolman charged with failing to follow a direct order from the mayor.
[v] Two months later, on September 23, 1995, an article in the Berkshire Eagle reported on defendant’s dismissal of police brutality charges against North Adams Patrolman Burdick. Defendant is reported as having said “he believed police union leadership concocted the charges against Burdick, who narrowly lost the vice presidency of the union last year.” Plaintiff asserts that this statement was malicious and recklessly false.
[vi/vii] On October 7, 1995, both the North Adams Transcript and the Berkshire Eagle reported on defendant’s allegations of possible improprieties in the Union’s fundraising and his request that the state attorney general’s office investigate the Union for alleged fraud and failure to appropriately register the drive. Under the headline MAYOR SEEKS PROBE OF COP FUNDRAISERS, The North Adams Transcript article contained a quote by defendant: “It’s my belief they have been collecting this money fraudulently and have not been telling the truth of it. And they’ve been avoiding filing this report.” Plaintiff cites this statement as defamatoiy.
According to the Berkshire Eagle article, defendant charged that a professional fund-raiser hired by plaintiff told residents that money they spent on tickets to a sporting event would be used for student scholarships and the DARE program. Defendant averred that in fact sixty percent of the contributions went to the fund-raiser, while most of the rest went to plaintiff to cover legal fees, parties and other union activities. In this article defendant is again quoted as having stated: “It’s my belief they have been collecting this money fraudulently and have not been telling the truth about it. They’re just preying on people and it isn’t right. . . If someone came in here with a scam, we would arrest them and throw them in jail. I believe what they’ve been doing is a scam.” Plaintiff contends that this statement was a malicious and reckless effort to discredit plaintiff in their own community and to damage their reputation among the people they serve.
The parties agree that each of the above statements was correctly attributed to defendant. Thus the facts of this case are undisputed. The question before this Court therefore, is whether plaintiff has produced enough evidence to show that defendant’s statements constitute defamation as it is defined for purposes of this lawsuit.
[ 2 ] Plaintiff bears the burden of proving that defendant made the allegedly defamatory statements with actual malice. Typically, defendant’s statements would be considered defamatory if, in the circumstances, they discredited plaintiff “in the minds of any considerable and respectable segment of the community.” Draghetti v. Chmielewski, 416 Mass. 808, 811, 626 N.E.2d 862 (1994), citing Tropeano v. Atlantic Monthly Co., 379 Mass. 745, 751, 400 N.E.2d 847 (1980), quoting Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 853, 330 N.E.2d 161 (1975). However, in the context of a case where plaintiff is a public figure, defendant is a public official, or the alleged statements were made in the course of a labor dispute, the applicable legal standard for defamation is actual malice. New York Times Co. v. Sullivan, supra at 280. According to this standard, plaintiff may not recover “unless he proves that the statement[s were] made with ‘actual malice’ — -that is, with knowledge that [they were] false or with reckless disregard of whether [they were] false or not.” Id.
If the actual malice standard applies in this case, therefore, plaintiff cannot prevail merely by showing that defendant attempted to damage plaintiff s reputation among the people of North Adams. Rather, plaintiff must meet the heightened burden of proving that defendant made the statements with knowledge *215 of their falsity or with reckless disregard for the truth. Old Dominion No. 496, Nat’l Ass’n of Letter Carriers v. Austin, 41 U.S. 264, 273 (1974). Defendant offers three compelling arguments in support of his contention that the actual malice standard applies to the present set of facts.
a. Publicfigure. Defendant argues that for purposes of this defamation suit, plaintiff is a public figure and must therefore prove that defendant acted with actual malice in making the allegedly defamatory statements. New York Times Co. v. Sullivan, supra. In Gertz v. Robert Welch, Inc., 418 U.S. 323, 345, 351, 94 S.Ct. 2997, 3009, 3013 41 L.Ed.2d 789 (1974), the United States Supreme Court established the standards for and distinguished between two classes of public figures: those people deemed public figures for all purposes and those who become public figures “for a limited range of issues.” To be considered a limited public figure plaintiff must have voluntarily injected itself into a particular public controversy in an attempt to influence its outcome. Determining whether this context exists in the present case necessitates “looking to the nature and extent of [plaintiffs] participation in the particular controversy giving rise to the defamation.” Id.
It is uncontested that in each of the newspaper articles that form the basis for this suit, plaintiff held itself out to the public as a representative of the Union by speaking openly and publicly about the Union’s ongoing labor and contract disputes with the City. The labor negotiations were a matter of public interest and had been widely publicized. Accordingly, this Court holds that plaintiff is a public figure for the purposes of this litigation and bears the burden of proving defendant’s “actual malice” in order to prevail. Gertz, at 342, Lyons v. New Mass. Media, 390 Mass. 51, 55, 435 N.E.2d 451, 455 (1983) (whether a party is a public figure may be determined as a matter of law if “the facts bearing thereon are uncontested or agreed by the parties”).
b. Labor dispute context. Defendant asserts as well that since the alleged statements were made in the context of a labor dispute, “federal labor law preempts state libel law to the extent that defendant’s statements are actionable only if made with knowledge of their falsity or with reckless disregard for the truth.” Tosti v. Ayik, 386 Mass. 721, 723, 437 N.E.2d 1062 (1982) citing Old Dominion No. 496, Nat’l Ass’n of Letter Carriers v. Austin, supra at 273. The term “labor dispute” includes
any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee.
29 U.S.C. §152 (1976). Defendant correctly points out that he made the allegedly defamatory statements within the context of a labor dispute. The remarks were based primarily on ongoing or completed investigations of Union police officers and their activities in the community, or were related to the long running contract dispute between the Union and the City of North Adams. The United States Supreme Court mandated that the New York Times malice standard be pleaded and proved by plaintiffs in cases alleging defamation in the context of a labor dispute, since
labor disputes are ordinarily heated affairs; the language that is commonplace there might well be deemed actionable per se in some state jurisdictions. Indeed [labor disputes] are frequently characterized by bitter and extreme charges, countercharges, unfounded rumors, vituperations, personal accusations, misrepresentations and distortions. Both labor and management often speak bluntly and recklessly, embellishing their respective positions with imprecatory language.
Linn v. Plant Guard Workers Local 411, 383 U.S. 53, 64-65, 86 S.Ct. 657, 663-64, 15 L.Ed.2d 582 (1966). The articles in the record recount just such a “heated affair” between the disputants; both parties participated in an ongoing exchange of “bitter and extreme charges.” Accordingly, plaintiff bears the burden of showing that defendant made the alleged statements with actual malice.
c.Privileges protecting public officials. Finally, defendant claims that as Mayor of North Adams, he was entitled to at least conditional, if not absolute privilege to make what may be considered otherwise defamatory statements. “Generally the recognition of an absolute privilege in defamation cases is limited to cases in which public policy or the administration of justice requires complete immunity from the threat of defamation suits.” Ezekial v. Jones Motor Co., Inc., 374 Mass. 382, 384 (1978). Traditionally such cases have involved statements made in a judicial proceeding, Sriberg v. Raymond, 370 Mass. 105, 108, 345 N.E.2d 882 (1976), or before a legislative committee, Sheppard v. Bryant, 191 Mass. 591, 78 N.E. 394 (1906).
Since defendant’s alleged statements were made voluntarily to newspaper reporters at press conferences, a denial of absolute privilege would not offend the interests of public policy. Defendant is entitled, however, to a conditional privilege.
The Supreme Judicial Court has held that a public official is conditionally privileged to make otherwise defamatory statements while performing public duties, as long as the official does not act with malice. Mulgrew v. Taunton, supra at 634-35. “The threat of defamation suits may deter public officials from complying with their official public duties when those duties include the need to make statements on important public issues. The conditional privilege, therefore, is meant to allow public officials to speak freely on *216 matters of public importance during the exercise of their official duties . . . unless there is unnecessary, unreasonable or excessive publication.” Id. at 635.
Defendant’s allegedly defamatory statements were made in his official capacity as Mayor of North Adams and as part of his official duty to inform the citizens of North Adams as to the ongoing contract and labor disputes between the City and the Union. The reported remarks were based on matters of public importance, including investigative reports, public complaints, labor negotiations and police relations. Furthermore, defendant’s statements were part of an already highly, but not excessively publicized debate. Thus, unless plaintiff can show that defendant made the statements maliciously, defendant is protected from liability by a conditional privilege.
In sum, this Court holds that plaintiff is a public figure for purposes of this lawsuit; that the allegedly defamatory statements were made in the context of a labor dispute; and that as a public official defendant is protected by a conditional privilege. The actual malice standard may be invoked by any one of these factors. In order to prevail, therefore, plaintiff must show that the comments attributable to defendant were made either with knowledge of their falsify or with reckless disregard for whether those comments were false or not. New York Times v. Sullivan, supra at 279-80.
[ 3 ] The statements allegedly attributed to the defendant do not constitute actual malice and were not defamatory as a matter of law. “When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.” Mass.R.Civ.P. 56(e). See Madsen v. Erwin, 395 Mass. 715, 719, 481 N.E.2d 1160 (1985). Plaintiff has failed to make the necessaiy responsive showings to each of defendant’s statements.
Rather than offer any counterarguments against defendant’s contention that the actual malice standard applies, plaintiff asserts that defendant’s introduction of this issue raises a determination of defendant’s state of mind and “is the disputed issue of material fact on which this cases rises or falls.” Where there is such an issue of disputed fact, summary judgment may be inappropriate, Godbout v. Cousens, 396 Mass. 254, 258, 485 N.E.2d 940 (1985), citing Hutchinson v. Proxmire, 443 U.S. 111, 120, n.9, 99 S.Ct. 2675, 2680 n.9, 61 L.Ed.2d 411 (1979), but only if there is some indication before this Court “from which an inference of actual malice — knowing falsehood or reckless disregard of the truth — could be drawn.” Aarco, Inc. v. Baynes, 391 Mass. 560, 564, 462 N.E.2d 1107 (1984). The undisputed facts offer no such inference.
[i] Defendant’s allegation that “union leadership was engaging in intimidation tactics, such as possible vandalism to some police officer’s personal cars may be a serious charge of criminal activity, but plaintiff has failed to show that it was uttered with actual malice. Rather than offer any proof to dispel this charge, plaintiff merely states that union leadership never engaged in such tactics; that the allegations were never investigated or acted upon by the North Adams Police Department; and finally, that Barrett admitted in a separate article dated July 16, 1995 that “I can’t prove the vandalism.” Plaintiffs response fails to support a finding that defendant necessarily believed his statements were false. Accordingly, this portion of plaintiffs complaint cannot survive summary judgment.
[ii] Plaintiff fails to show that defendant’s accusation that plaintiff had “fractured and irreparably damaged and divided” the police department was issued maliciously. Plaintiff supports its claim by asserting that Barrett’s statement must be construed to mean that the Union’s letter had somehow undermined the police department’s mission of protecting the citizens of North Adams. Nowhere in the related article, however, does defendant accuse plaintiff of jeopardizing public safety.
Defendant points out that another on-the-record article which appeared in the Berkshire Eagle the same day begins by stating, “Mayor John Barrett III and the local police union broke into open warfare yesterday, with both acknowledging a serious rift in the Police Department." (Emphasis added.) That article also reports that Public Safety Commissioner Robert G. Perry (“Perry”) agreed that “the recent charge about putting officers’ lives in danger [has] caused several arguments in the ranks.” In offering no facts to contradict this convergence of opinion that the police department was fractured, plaintiff fails to negate any proof that defendant issued his statements with knowledge of their falsity or with reckless disregard of whether they were false or not. Accordingly, this portion of plaintiffs complaint cannot survive summary judgment.
[iii] Plaintiff fails to show that defendant’s alleged suggestion that plaintiff was intimidating the citizens of North Adams was either malicious or recklessly false. Defendant’s statement was a response to a bitter letter accusing the City of failing to protect the officers’ safety. In the same article, Commissioner Perry agreed with defendant that plaintiffs letter to the City was “insulting,” and he confirmed defendant’s allegations that officers had been harassed by members of the Union, identifying by name five officers who claimed to have been harassed and intimidated by the Union because of recent City promotions. Plaintiffs responsive offering is merely a denial of any abuse of its position to gain some advantage. This argument is insufficient to support a finding of fact that *217 defendant’s statement constituted actual malice. Accordingly, this portion of plaintiffs complaint cannot survive summary judgment.
[iv] Plaintiff fails to provide sufficient evidence to support a finding that defendant maliciously issued the charge that “[Union police officers] believe they are above the [rules and regulations of the North Adams Police Department].” Plaintiff relies instead on the mere fact that defendant’s suspension of a North Adams City patrolman was overturned, and fails to show by affidavit or otherwise that the defendant believed his statement to be false, or that he demonstrated a reckless disregard for the truth. Accordingly, this portion of plaintiffs complaint cannot survive summary judgment.
[v] Plaintiff has not provided sufficient facts to show that defendant’s allegedly defamatory comment that Union leadership concocted charges against Patrolman Burdick was recklessly false. Plaintiff merely responds by arguing that no evidence ever existed to support defendant’s statement. Meanwhile, defendant points out that Burdick stated himself that he was “considering legal action against Union leaders.” Plaintiff fails to set forth specific facts showing that there is a genuine issue for trial. Accordingly, this portion of plaintiffs complaint cannot survive summary judgment.
[vi/vii] Plaintiff has failed to offer proof that defendant’s statements intimating that plaintiffs fundraising was a scam actually rise to the level of actual malice. Plaintiff argues that by these statements, defendant meant to accuse plaintiff of fraud, lying and perpetuating a criminal scam.
In his defense, defendant points out that police patrolman Ronald F. Ciepela (then-President of the Union) is cited in the Berkshire Eagle article as acknowledging that plaintiff had received complaints from citizens about the Union’s improper fundraising activities. Apparently, Ciepela “freely acknowledged that the money raised by fund drives has been used to pay legal fees for union grievances or for officers fighting suspensions.” Ciepela is quoted as saying, “We are not a charitable organization and we don’t claim to be. We raise money for the North Adams Police Association, not for charities.”
Plaintiff supports its claim by asserting that it complied with the Attorney General’s office in conducting the fundraising drive. This argument does not provide the necessary responsive showing. While defendant’s statements are serious accusations of plaintiffs involvement in a scam, plaintiff has failed to produce evidence that defendant issued these statements with knowledge of their falsity or with reckless disregard of the truth. Accordingly, this portion of plaintiffs complaint cannot survive summary judgment.
For the aforementioned reasons, this Court finds that plaintiff has failed to show that at least one of defendant’s allegedly defamatory statements rises to the level of actual malice.
C. Conclusion. Plaintiff has failed to produce a sufficient showing of defendant’s actual malice and defendant is entitled to judgment as a matteroflaw. “Actual malice is not necessarily proved in terms of ill will or hatred, but is proved rather by a showing that the defamatory falsehood was published with knowledge that it was false or reckless disregard of whether it was false.” Stone v. Essex County Newspapers, supra at 867. To prove “reckless disregard” there must be “sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.” Id., quoting St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d. 262 (1968).
Defendant established by affidavit that
at no time did I believe the statements attributed to me in the articles were false, nor did I speak with reckless disregard for the truth. Any statement attributed to me in the news articles were made by me in my official capacity as Mayor and concerned matters of public record or interest based upon information I received, as Mayor, from completed or ongoing police department investigations, ongoing labor and contract negotiations, public complaints, and administrative hearings. The statements attributed to me were made out of my concern, as Mayor of North Adams, for the public safely and the protection of citizens of North Adams, and to keep citizens of North Adams informed as to ongoing contract and labor disputes and negotiations, matters of public safely, and matters concerning City of North Adams municipal finances.
The statements upon which plaintiffs complaint is based do not amount to defendant’s “reckless disregard” for the truth of plaintiffs activities in relation to non-union officers, North Adams City officials or citizens of the City of North Adams. Although the record reflects that a series of bitter and inflammatory statements were exchanged between the parties, plaintiff has failed to provide sufficient evidence for a jury to conclude that defendant in fact entertained serious doubts as to the truth of his allegedly defamatory statements. Stone v. Essex County Newspapers, Inc., supra at 867. In the absence of such a showing, defendant is entitled to summary judgment as a matter of law.
ORDER
It is therefore ORDERED that summary judgment enter for defendant.

Defendant’s motion to dismiss was denied on the grounds that it did not appear to the Court beyond doubt that the plaintiff could prove no set of facts in support of its claim which would entitle it to relief. Nader v. Citron, 372 Mass. 96, 98 (1977).