AUGUSTINO TOSTI vs. BAHEEGE AYIK & another.[1]

Middlesex. March 3, 1982. — July 9, 1982.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, & O'CONNOR, JJ.

*Labor*, Federal preemption. *Libel and Slander*. *Jurisdiction*, Labor case. *Constitutional Law*, Federal preemption. *Words*, "Labor dispute."

Allegedly libelous statements, published in a local union newspaper, to the effect that the plaintiff, a foreman in an automobile manufacturing plant, had engaged in bargaining unit work, contrary to a collective bargaining contract then in force, and that he had punched repair tickets without the requisite work being done, were, in the circumstances, made in the context of a "labor dispute," within the contemplation of 29 U.S.C. § 152(9) (1976), so that the plaintiff's action for libel, based on the statements, was governed by Federal labor law and relief could be granted by a State court only on proof that the statements were made with actual malice, as defined in *New York Times Co.* v. *Sullivan*, 376 U.S. 254, 279-280 (1964). [723-725]

A defendant's claim that an action for libel was preempted by Federal labor law raised a question of subject matter jurisdiction, which could properly be considered for the first time on appeal. [725-726]

A claim by a foreman against members of a labor union alleging tortious interference with his employment, based upon libelous statements in a local union newspaper which resulted in his discharge, was not preempted by Federal labor law, so that if the plaintiff prevailed on the separate claim for libel he could prevail on the claim for tortious interference if successful in proving that his discharge was due to such unprotected union activity. [726-729]

TORT. Writ in the Superior Court dated August 6, 1973. The action was tried before *Good*, J.

The Supreme Judicial Court granted a request for direct appellate review.

[1] The other defendant is Henry Ayik. Both defendants were sued individually and as officers and members of the United Auto Workers, Local 422.

*Michael P. Angelini* (*Vincent F. O'Rourke, Jr.*, with him) for the defendants.

*Robert L. Bouley* (*James W. Luby & Karen M. Thursby*, with him) for the plaintiff.

NOLAN, J. This action arises out of the publication by the defendants of an article in a local union newspaper. The article, which appears in the margin,[2] made two intertwining allegations about the plaintiff. One was that he was engaged in bargaining unit work contrary to the contract then in force between the employer, General Motors, and the union, United Auto Workers, Local 422. The other was that he was punching repair tickets without the requisite work having been done.[3] The newspaper was distributed to both union and management personnel. On the morning following distribution, the plaintiff was called to the plant manager's office, where mention of the article was made. Two days later the plaintiff was fired.

The defendant Baheege Ayik was shop chairman of the local union at all times material to this action. The defendant Henry Ayik, who wrote the article based on his witnessing the purported events described therein, was a union member at all times pertinent to this action.

The plaintiff brought an action claiming that he was libelled by the article and that the defendants tortiously interfered with his employment by publishing the article. A

---

[2] "On Monday, June 7th, [1971,] at 11:34 P.M. Gus Tosti foreman in the electrical hole, was working on job #603677, a green 4 door Pontiac, T37. Pete Hanningson (rank unknown) was standing guard next to him. This is how Gus repairs cars. He has an inspection punch, #K2 and if he reverses the punch it's K5. He was punching all the items on the ticket. This sort of thing goes on constantly. We have men who work in the Inspection Department checking these cars for defects. After writing the defects down the foremen fix them by punching the ticket out. Now, I understand why so many cars are shipped from the electrical hole. GM's mark of excellence means nothing to them. If you're ever picked as a driver for the electrical hole first, blow the horn, next try the brakes and good luck!!"

[3] Both the defendants and the plaintiff subscribe to these two possible constructions of the article.

jury found for the plaintiff, and the trial judge denied motions for a new trial and judgment notwithstanding the verdict. The defendants appealed and this court granted their application for direct appellate review. For reasons which will appear below, we are ordering that a new trial be held on both the libel claims and the tortious interference claim.

1. *Preemption of the libel claim.* Federal labor law preempts State libel law to the extent that defamatory statements made in the context of a labor dispute are actionable only if made with knowledge of their falsity or with reckless disregard of the truth. *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers* v. *Austin*, 418 U.S. 264, 273 (1974). *Linn* v. *Plant Guard Workers Local 114*, 383 U.S. 53, 61 (1966). In other words, State courts may grant relief in such defamation actions only if the defamatory statements were made with actual malice, as defined in *New York Times Co.* v. *Sullivan*, 376 U.S. 254, 279-280 (1964).

The question as to whether instructions on actual malice need be given in this case turns, then, on whether the allegedly defamatory article was published in the context of a labor dispute. The term "labor dispute" includes "any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee." 29 U.S.C. § 152(9) (1976). We note that "[r]arely have courts found concerted union activity to fall outside this broad definition. Where the union acts for some arguably job-related reason and not out of pure social or political concerns, a 'labor dispute' exists." *Hasbrouck* v. *Sheet Metal Workers Local 232*, 586 F.2d 691, 694 n.3 (9th Cir. 1978). The term "labor dispute" should be broadly and liberally construed. *United Elec. Coal Cos.* v. *Rice*, 80 F.2d 1, 5 (7th Cir. 1935), cert. denied, 297 U.S. 714 (1936).

We hold that the article in question here was published in the context of a labor dispute. There were, arguably, two

reasons why the article was published. One was to call attention to a supervisory employee doing bargaining unit work, to the harm of union members. The other was to injure the reputation of the plaintiff by alleging that he claimed to have done repair work that he knew had not been done. Evidence adduced at trial was that the former was an important concern of the union. A dispute over supervisory personnel doing bargaining unit work is a controversy concerning terms and conditions of employment. Cf. *Aladdin Indus., Inc.*, 22 N.L.R.B. 1195, 1216 & n.11 (1940) (dispute involving discharge or demotion of supervisor who is objectionable to employees is a labor dispute). We cannot separate the allegedly defamatory statement from the protected activity concerning the terms and conditions of employment. Whether the Federal labor law "partial pre-emption of state libel remedies is applicable obviously cannot depend on some abstract notion of what constitutes a 'labor dispute'; rather, application of [the actual malice standard] must turn on whether the defamatory publication is made in a context where the policies of the federal labor laws leading to protection for freedom of speech are significantly implicated." *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers* v. *Austin, supra* at 279. Those policies were summed up by the Supreme Court in *Linn* v. *Plant Guard Workers Local 114*, 383 U.S. 53, 58 (1966): "Labor disputes are ordinarily heated affairs; the language that is commonplace there might well be deemed actionable *per se* in some state jurisdictions. Indeed, [labor disputes] are frequently characterized by bitter and extreme charges, countercharges, unfounded rumors, vituperations, personal accusations, misrepresentations and distortions. Both labor and management often speak bluntly and recklessly, embellishing their respective positions with imprecatory language." Such use of language was approved by Congress. *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers* v. *Austin, supra* at 272. To protect this freewheeling use of language, the United States Supreme Court mandated that the *New York Times* malice standard be pleaded and proved by plain-

tiffs in cases alleging defamation in the context of a labor dispute. *Linn* v. *Plant Guard Workers Local 114, supra* at 64-65.

The plaintiff, responding to this argument, maintains that, as this issue was not raised at trial, the defendants are precluded from raising it here. See *Royal Indem. Co.* v. *Blakely*, 372 Mass. 86, 88 (1977). Further, the plaintiff argues that, since the defendants requested instructions that did not contain the *New York Times* standard, and these requests for jury instructions were granted, they should not be allowed to raise this error on appeal. Cf. *Korb* v. *Albany Carpet Cleaning Co.*, 301 Mass. 317, 318 (1938).

The United States Supreme Court has made it clear that, because the policy evidenced by the Federal labor laws is so important, a court only has "jurisdiction to apply state remedies if the complainant pleads and proves that the statements were made with malice and injured him." *Linn* v. *Plant Guard Workers Local 114, supra* at 55. The judge's instructions in this case were not a mere error of law. Rather, Congress, in passing the Federal labor laws, "deprived the States of the power to act," *id.* at 59, in a defamation case arising from a labor dispute absent the correct application of the *New York Times* standard. Subject matter jurisdiction may be raised for the first time on appeal, as it "cannot be conferred by consent, conduct or waiver." *Litton Business Syss., Inc.* v. *Commissioner of Revenue*, 383 Mass. 619, 622 (1981). See *Allard* v. *Estes*, 292 Mass. 187, 196 (1935).

Thus, the judge's charge, lacking as it did an instruction that for the plaintiff to prevail on the defamation counts he would have to prove actual malice, constituted reversible error which requires a new trial.[4]

---

[4] We note that the *"sine qua non* of recovery for defamation in a labor dispute . . . is the existence of falsehood." *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers* v. *Austin*, 418 U.S. 264, 283 (1974). In this case, therefore, there can be no recovery for defamation for a statement which was true.

Our holding that the plaintiff may recover in a State court only if he proves that the defendants published their statements knowing the defamatory matter to be false, or with reckless disregard as to its truth or falsity, negates any necessity to discuss whether the judge's charge as to conditional privilege was correct. The defendants claim that the statements published in the union newspaper were, even if defamatory, privileged. A conditional privilege, however, is lost if abused. One manner of such abuse is publication with knowledge of falsity or with reckless disregard of the truth. Restatement (Second) of Torts § 600 (1977). See *Vigoda* v. *Barton*, 348 Mass. 478, 485 (1965); J.R. Nolan, Tort Law § 101 (1979). Since that is the same standard as must be satisfied for liability to arise in this case, it follows that if "actual malice" is proved, any conditional privilege is thereby proven lost. *Wright* v. *Haas*, 586 P.2d 1093, 1097 (Okla. 1978).

2. *Preemption of the tortious interference claim.* The defendants argue that the plaintiff's claim of tortious interference with employment is preempted by Federal labor law. Although labor law preemption is a difficult field, a careful analysis of Federal law leads to the conclusion that we should hold that in this case Federal labor law does not preempt the plaintiff's cause of action for tortious interference with an employment relationship if the jury finds that a libel made with actual malice was the basis of such interference.

"The question whether federal law 'preempts' state action, largely one of statutory construction, cannot be reduced to general formulas. In evaluating patterns of statutory interaction, the Supreme Court has declared generally that whether challenged state action has been pre-empted turns on whether or not it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' Since congressional purposes can be either substantive or jurisdictional, a state action may be struck down as an invalid interference with the federal design either because it conflicts with the actual operation of a federal pro-

gram, or because, whatever its substantive impact, it intrudes upon a field that Congress has validly reserved to the federal sphere." L. Tribe, American Constitutional Law § 6-23, at 377 (1978).

In determining whether Federal law preempts State law, there are three factors to be considered: first, the presence of an overriding State interest; second, whether the underlying conduct (the alleged libel) is protected under the National Labor Relations Act (NLRA); and third, the risk that the State cause of action would interfere with the effective administration of national labor policy. *Linn* v. *Plant Guard Workers Local 114*, 383 U.S. 53, 61-63 (1966).[5]

The United States Supreme Court has indicated that in most circumstances State substantive law should prevail in cases of tortious conduct and in cases of State unemployment benefits. See *Farmer* v. *Carpenters Local 25*, 430 U.S. 290 (1977); *New York Tel. Co.* v. *New York State Dep't of Labor*, 440 U.S. 519 (1979). From a reading of these decisions, we conclude that the preemption doctrine should not be applied if the matter subject to State law does not affect the national labor policies of the NLRA. See, e.g., *Sears, Roebuck & Co.* v. *San Diego County Dist. Council of Carpenters*, 436 U.S. 180, 198 (1978). See also *Attorney Gen.* v. *Travelers Ins. Co.*, 385 Mass. 598, 610-611 & nn. 20-21 (1982); Note, Labor Law — Federal Preemption — The Aftermath of *Sears*, 27 Wayne L. Rev. 313 (1980).

The intentional circulation of defamatory materials in the context of a legitimate labor dispute is not protected activity. See *Farmer* v. *Carpenters Local 25*, 430 U.S. 290, 298 (1977); *Linn* v. *Plant Guard Workers Local 114*, 383 U.S.

---

[5] Tribe restates the tests of Federal preemption as follows: (1) whether State power conflicts with the power Congress has exercised in the field; (2) whether State power conflicts with that which Congress might have exercised, so called "dormant" power to act in a certain area; (3) whether Congress has legislatively preserved to the Federal government the power to act in a certain area. L. Tribe, American Constitutional Law § 6-23 (1978).

53, 61 (1966); *Dazzo* v. *Local 259, UAW*, 448 F.Supp. 799, 801-802 (E.D. N.Y. 1978); *Davenport* v. *Terry*, 134 N.J. Super. 88 (1975). In *Linn* v. *Plant Guard Workers Local 114, supra*, an employee filed a claim against the union for libel. The libel was published in the context of an organization campaign by the company's employees. Despite the fact that the libel arose in the course of a labor dispute, the Court did not preclude State action but limited "the availability of state remedies for libel to those instances in which the complainant can show that the defamatory statements were circulated with malice and caused him damage." *Id.* at 64-65. In *International Union, UAW* v. *Russell*, 356 U.S. 634 (1958), the Supreme Court allowed a plaintiff to recover for tortious interference with employment where the complaint was based on unprotected activity (violence). A contrary result is not required by *Local 207, International Ass'n of Bridge, Structural & Ornamental Iron Workers Union* v. *Perko*, 373 U.S. 701 (1963). In *Perko*, the union did not employ any unprotected means in its labor dispute. In *Farmer* v. *Carpenters Local 25*, 430 U.S. 290, 300 n.9 (1977), the Supreme Court ruled that "[u]nder these circumstances, concurrent state-court jurisdiction would have impaired significantly the functioning of the federal system." Since the defendants' conduct in the present case may not have been a protected means, the plaintiff's complaint that the union interfered with his employment by the publication of defamatory material is not preempted. See *International Union, UAW* v. *Russell*, 356 U.S. 634 (1958); 6 Federal Regulation of Employment Service § 44:45, at 48-50 (1980), and cases cited.

The plaintiff's State tort claim, if based on libel made with actual malice, does not affect any national labor policy. "There [is] little risk [here] that the state cause of action would interfere with the effective administration of national labor policy." *Farmer* v. *Carpenters Local 25*, 430 U.S. 290, 298 (1977). "[I]n the absence of compelling congressional direction, we [should] not infer that Congress [has] deprived the States of the power to act." *New York Tel. Co.*

v. *New York State Dep't of Labor*, 440 U.S. 519, 540 (1979), quoting from *San Diego Bldg. Trades Council* v. *Garmon*, 359 U.S. 236, 244 (1959). Our State tort law does not have a greater impact on national labor policy than the New York State law granting unemployment benefits to strikers. See *New York Tel. Co.* v. *New York State Dep't of Labor, supra.* Thus, Federal law does not preempt the plaintiff's claim in these circumstances.

Finally, the plaintiff's claim is "a function of the particularly abusive manner in which the [interference with employment] is accomplished . . . rather than a function of the actual . . . [interference] itself." *Farmer* v. *Carpenters Local 25, supra* at 305. "If the [plaintiff's] common-law rights of action against a union tortfeasor are to be cut off, that would in effect grant to unions a substantial immunity from the consequences of [the intentional circulation of defamatory material], such as [may have been] employed during the [labor dispute] in the present case." *International Union, UAW* v. *Russell*, 356 U.S. 634, 645 (1958).

"[T]he labor movement has grown up and must assume ordinary responsibilities" (*Linn* v. *Plant Guard Workers Local 114*, 383 U.S. 53, 63 [1966]; see *DiLuzio* v. *Electrical Radio & Mach. Workers Local 274, ante* 314, 318 [1982]), and, therefore, in the absence of a clear command by Congress or the Supreme Court of the United States, we conclude that our tort law is not preempted.

In order, however, to ensure that the instant claim does not interfere with national labor policy, we make the following observation. To prevail on his tortious interference with employment claim, the plaintiff must both prevail on his libel claim, see part 1, *supra*, and convince the trier of fact that his discharge was due to such unprotected activity.[6]

In conclusion, we reverse the judgments and order a new trial on both the libel and the tortious interference with employment claims.

*So ordered.*

---

[6] If the plaintiff prevails on the tortious interference claim, it follows that no other privilege was available to the defendants. See *supra* at 726.