SUPERIOR COURT 
 
 ARCO NATIONAL HOLDINGS, INC. v. LABORERS’ INTERNATIONAL UNION OF NORTH AMERICA; MASSACHUSETTS & NORTHERN NEW ENGLAND LABORERS’ DISTRICT COUNCIL OF THE LABORERS’ INTERNATIONAL UNION OF NORTH AMERICA; LABORERS’ INTERNATIONAL UNION OF NORTH AMERICA LOCAL 22

 
 Docket:
 2384CV02388-BLS2
 
 
 Dates:
 May 22, 2024
 
 
 Present:
 Kenneth W. Salinger
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 DECISION AND ORDER ON MOTIONS TO DISMISS
 
 

 ARCO National Holdings, Inc., is a commercial construction company. It contends that Local 175 and Local 22 of the Laborers’ International Union of North America have publicized allegedly offensive posts on the personal Facebook page of the manager of ARCO’s New England regional office, linked those statements to ARCO in a manner suggesting that ARCO condones or tolerates them, and thereby caused clients to terminate engagements of ARCO on several large projects. ARCO asserts claims for tortious interference with contracts and with advantageous business relations, engaging in unfair or deceptive trade practices in violation of G.L. c. 93A, and defamation.
Local 175 and its business manager, Michael P. Gagliardi, have filed a special motion to dismiss part of the claims against them, to the extent they are based on alleged communications with municipal representatives, under the so- called anti-SLAPP statute, G.L. c. 231, § 59H. In addition, Local 175, Gagliardi, and Local 22 (collectively, the “Union”) have all moved to dismiss the entire complaint under Mass. R. Civ. P. 12(b)(6).[1]
The Court will deny the anti-SLAPP motion because ARCO’s claims against Local 175 and Mr. Gagliardi are not based solely on petitioning activity. It will allow the motions to dismiss under Rule 12(b)(6), though it will treat the arguments that certain claims are preempted by federal law as requests to dismiss those claims under Rule 12(b)(1) for lack of subject matter jurisdiction.
 
--------------------------------------------
 
[1] ARCO voluntarily dismissed, without prejudice, its claims against the  Laborers’ International Union of North America and the Massachusetts & Northern New England Laborers’ District Council of the Laborers’ International Union of North America.
 
                                                            -1-
 
ARCO’s claims for tortious interference and under c. 93A are barred by Garmon preemption because they arise out of conduct that the National Labor Relations Act arguably protects or prohibits, and that is not merely a peripheral concern of the Act. The Court will therefore dismiss these claims without prejudice.
The claim for defamation fails, and must be dismissed with prejudice, because the factual allegations in the complaint do not plausibly suggest that the Union has made any false statements. To the extent that suggesting ARCO condones or tolerates its employee’s statements can be construed as a factual statement rather than an opinion, the defamation claim still fails because the complaint’s allegations do not plausibly suggest that the Union acted with actual malice, and therefore the claim would be barred by Garmon preemption.
1. Factual Background. To decide the issues raised in the motions to dismiss, the Court must consider some undisputed background information about charges of unfair labor practices filed with the National Labor Relations Board (“NLRB”) as well as the factual allegations in ARCO’s verified complaint.
1.1. NLRB Proceedings. The Court takes judicial notice of publicly-available filings made with the NLRB regarding a charge filed by Local 175 against ARCO, and two charges that ARCO then filed against Local 175.[2]
The Court may consider these NLRB filings in deciding the pending motions to dismiss, without converting them into motions for summary judgment, because these documents are matters of public record and ARCO does not dispute the authenticity of these documents. See, e.g., Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000) (“matters of public record”); Kavowras v. New York Times Co., 328 F.3d 50, 57 (2d Cir. 2003) (NLRB charge filed by plaintiff); City of Miami Fire Fighters’ and Police Officers’ Retirement Trust  v.  CVS Health Corp.,  46 F.4th 22, 26 (1st Cir. 2022) (documents whose authenticity is not disputed).[3]
 
--------------------------------------------
 
[2] Local 175 attached copies of these NLRB charges and some related documents filed with the NLRB to the memorandum in support of its motion to dismiss filed under Mass. R. Civ. P. 12(b)(6).
[3] Although Kavowras and the First Circuit precedent summarized in City  of  Miami Retirement Trust applied the federal rules of civil procedure, judicial construction of these federal rules also applies to parallel Massachusetts rules, “absent compelling reasons to the contrary or significant differences in content.” Smaland Beach Ass’n, Inc. v. Genova, 461 Mass. 214, 228 (2012), quoting Strom v. American Honda Motor Co., 423 Mass. 330, 335 (1996), and Rollins Envtl. Servs., Inc., v. Superior Court, 368 Mass. 174, 180 (1975).
 
                                                            -2-
 
In May 2023, Local 175 filed an NRLB charge5 asserting that ARCO engaged in unfair labor practices in violation of §§ 8(a)(1) and 8(a)(3) of the National Labor Relations Act[4] (the “Act” or the “NLRA”) by allegedly removing a union employee from a job site for refusing to enter and work in an unsafe trench, and by allegedly barring Local 175 representatives from that job site when they came to assist this union member.
On June 6, 2023, and July 11, 2023, ARCO filed NLRB charges[5] asserting that Local 175 engaged in unfair labor practices in violation of §§ 8(b)(4)(B) and 8(b)(1)(A) of the Act[6] by allegedly picketing an ARCO construction site in an attempt to coerce third-parties to stop doing business with ARCO, and by blocking access to and egress from that site and thereby restraining or coercing employees in the exercise of their rights under § 7 of the Act.
1.2. Allegations in Complaint. ARCO makes the following allegations in its verified complaint.
On June 26, 2023, ARCO received a letter from counsel for Local 175, enclosing a copy of a leaflet that Local 175 said it planned to distribute to “appropriate audiences.” The Local sent this letter to the lawyer who was representing ARCO on the first unfair labor practices charge that it filed against Local 175 at the NLRB. The letter said “the Local has learned that a principal of ARCO,” who it names, “has made multiple highly offensive comments on social media that strongly suggest bias against a variety of minority groups in our society.”
 
--------------------------------------------
 
[4] 29 U.S.C. § 158(a)(1) and (a)(3).
[5] The Court takes judicial notice of these filing dates from the public dockets maintained by the NLRB at https://www.nlrb.gov/case/01-CC-319676 and
 https://www.nlrb.gov/case/01-CB-321579 (last visited May 21, 2024). As noted above, a court may take judicial notice of “matters of public record” when deciding a motion to dismiss. See Schaer, 432 Mass. at 477. This includes online databases maintained by government agencies. Tilcon-Warren Quarries Inc. v. Commissioner of Revenue, 392 Mass. 670, 671 n.4 (1984) (taking notice of Commissioner’s list of manufacturing corporations); Marhefka v. Zoning Bd. of Appeals of Sutton, 79 Mass. App. Ct. 515, 516 n.5 (2011) (taking notice of local assessor’s online database); see also Commonwealth v. Greco, 76 Mass. App. Ct. 296, 301 n.9, rev. denied, 457 Mass. 1106 and 458 Mass. 1105 (2010) (court may take judicial notice of facts “capable of accurate and ready determination by resort to resources whose accuracy cannot reasonably be questioned”) (quoting Mass. Guide Evid. § 201(b)(2)).
[6] 29 U.S.C. § 158(b)(4)(B) and (b)(1)(A).
 
                                                            -3-
 
Enclosed with the letter was a leaflet that:
o said at the top—
ONES TO WATCH
ARCO National New England;
o below that heading listed the name and showed a photograph of an ARCO employee, identified on the leaflet as a “Principal” of ARCO;
o stated that, “A review of [the employee’s] past posts on his Facebook page could make one infer that he may be a racist, antisemitic, homophobic and suffers from hispanphobia;”
o also stated that, “He may also have a strong disregard for women athletes and get enjoyment out of seeing them slapped and beat and he may even think that joking about rape is acceptable;”
o identified a specific ARCO client, below which it asked, “Is this acceptable? What would your investors say? What about ESG?”[7];
o asserted that “there is no place for hate in Massachusetts; and
o on a separate page contained copies of numerous posts available on the employee’s Facebook page, with dates indicating that they were originally posted in 2010 or 2011.
The letter stated that Local 175 was giving this ARCO employee  48  hours  “to deny making these remarks or to provide any explanation that may suggest in context a lack of bias notwithstanding the comments.” It further stated that, “if we do not hear within that time frame, we will assume that the remarks are his and that there is no mitigating context.”
The employee identified in Local 175’s leaflet is an ARCO vice president and manages the company’s New England Region office, which is located in Framingham, Massachusetts. ARCO first hired this employee as a project manager in 2015. It knew nothing about the employee’s Facebook posts before receiving this letter. The employee was in high school in 2010 and 2011.
The Union created different versions of the handout that was enclosed with the June 26, 2023, letter, each of which named and was aimed at a different ARCO client or prospective client. The Union sent customized letters and handouts to
 
--------------------------------------------
 
[7]        The rhetorical question about ESG appears to refer to investment strategies that consider environmental, social, and governance principles or concerns.
 
                                                            -4-
 
at least four of ARCO’s clients, as well as to municipal leaders and municipal purchasing departments in Massachusetts. Mr. Gagliardi followed up with one ARCO client on July 7, 2023, by sending an email to the client’s executive leaders. Gagliardi identified himself as a representative of Local 175 and stated that, because this company had not responded to the Union’s prior communication, he “will assume that you condone the vile statements” as well as ARCO’s “work practices and wage violations,” and notify the client’s investors about the company’s “lack of response” and “tacit approval” of those statements, practices, and violations.
In addition, the Union set up stations in front of the offices of three ARCO clients where it distributed versions of the leaflet and displayed signs or posts that were enlarged versions of the leaflet. It parked a box truck outside the Boston offices of multiple ARCO clients with an LED screen covering its side that said, “Rape is Not a Joke” and “ARCO National Construction.” And the Union also published versions of the leaflet on Instagram and Facebook.
This campaign by the Union caused two clients to terminate their engagement of ARCO on two significant construction projects.
2. Anti-SLAPP Motion to Dismiss. Local 175 and Gagliardi have moved to dismiss part of the claims against them under the “anti-SLAPP” statute, which applies to and may bar civil claims that are based on a party’s “exercise of its right of petition under the constitution of the United States or of the commonwealth.” See G.L. c. 231, § 59H. “The acronym ‘SLAPP’ stands for strategic lawsuit against public  participation.”  The  Gillette  Co.  v.  Provost,  91 Mass. App. Ct. 133, 134 n.2 (2017). The Local 175 defendants seek dismissal under this statute of ARCO’s complaint “to the extent that it is based on … communications with municipal leaders and municipal purchasing departments in Massachusetts.”
Local 175 and Gagliardi have the burden of making a threshold showing that the claims against them are “based solely on … ‘petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities.’ ” 477 Harrison Ave., LLC v. Jace Boston, LLC, 477 Mass. 162, 168 (2017),
quoting Blanchard v. Steward Carney Hospital, Inc., 477 Mass. 141, 147 (2017).
The Court will deny this anti-SLAPP motion because the Local 175 defendants have not shown that the claims against them are based solely on petitioning activity aimed at influencing government officials “and have no substantial basis other than or in addition to the petitioning activities.” See Brice Estates,
 
                                                            -5-
Inc. v. Smith, 76 Mass. App. Ct. 394, 395-396, rev. denied, 456 Mass. 1106 (2010) (affirming denial of § 59H motion on this ground), quoting Wenger v. Aceto, 451 Mass. 1, 5 (2008).
As discussed above, ARCO’s claims are based only in small part on its passing allegation that the Local 175 defendants sent the contested leaflet and related communications to municipal representatives. The real focus of the complaint is on the allegations that the Union allegedly sent misleading communications to actual or potential private sector clients of ARCO, two of which allegedly terminated contracts or engagements with ARCO as a result.
When the Local 175 defendants served and filed their anti-SLAPP motion, the Supreme Judicial Court had construed § 59H as providing that “a special movant can meet its threshold burden with respect to the portion” of any claim that is based on petitioning activity, and seek and obtain dismissal of that part of the claim, even if the claim as a whole is not based solely on petitioning activity. Blanchard, 477 Mass. at 155. The decision in Blanchard held that a defendant may seek dismissal under § 59H of any “portion of a … claim that is based on petitioning activity, so long as that petitioning activity could have independently served as the sole basis for the claim.” Bristol Asphalt Co., Inc. v. Rochester Bituminous Products, Inc., 493 Mass. 539, 551 (2024).
More recently, however, the SJC “overrule[d] the additional requirement … that the motion judge parse the factual allegations underlying each claim to determine whether a portion of the opponent’s cause of action could be construed as being based on the proponent’s petitioning alone.” Id. at 554. “Mixed claims, that is, those based on a proponent’s petitioning along with substantial conduct other than or in addition to the petitioning activities,” may no longer be challenged under § 54. Id.
In other words, an anti-SLAPP motion may no longer be used to seek “partial dismissal” of a claim. Columbia Plaza Assocs. v. Northeastern Univ., 493 Mass. 570, 577 (2024). “Rather, if the special motion proponent cannot demonstrate that the claim is based solely on the proponent’s own petitioning activity, the special motion must be denied.” Id.
Under Bristol Asphalt and Columbia Plaza, the Local 175 defendants are not entitled to seek and the Court may not grant dismissal under the anti-SLAPP statute on the portions of ARCO’s claims that are based on communications with municipal officials. Since none of the claims is based solely on petitioning activity, the Court must deny the anti-SLAPP motion to dismiss.
 
                                                            -6-
 
3. Rule 12(b)(6) Motions to Dismiss. The Court will allow both motions to dismiss this action under Rule 12(b)(6) because the factual allegations in ARCO’s complaint, if true, do not “plausibly suggest … an entitlement to relief.” Lopez v. Commonwealth, 463 Mass. 696, 701 (2012), quoting Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).
However, the Court will treat the arguments that some of ARCO’s claims are preempted by the NLRA as requests under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction. “This type of preemption – which has become known as Garmon preemption – is based on the theory that Congress gave the NLRB exclusive jurisdiction over certain kinds of labor disputes.” International Longshoremen Ass’n, Local 1413-1465 v. Massachusetts Comm’n  Ag.  Discrim., 104 Mass. App. Ct. 28, 37 (2024). “A claim of Garmon pre-emption is a claim that the state court has no power to adjudicate the subject matter of the case[.]” International Longshoremen’s Ass’n, AFL-CIO v. Davis, 476 U.S. 380, 393 (1986).
The distinction between Rule 12(b)(6) and Rule 12(b)(1) motions affects the proper disposition if the motion is granted.
A dismissal under Rule 12(b)(6) “operates as a dismissal on the merits” and therefore has “res judicata effect.” Mestek, Inc. v. United Pacific Ins. Co., 40 Mass. App. Ct. 729, 731, rev. denied, 423 Mass. 1108 (1996), quoting Mass. R. Civ. P. 41(b)(3) and Isaac v. Schwartz, 706 F.2d 15, 17 (1st Cir. 1983); accord Saade v. Wilmington Trust, National Ass’n, no. SJC-13459, slip op. at 3, 2024 WL 2194832, at *2 (Mass. May 16, 2024) (rescript). In other words, a Rule 12(b)(6) dismissal is with prejudice.
In contrast, “[d]ismissals for lack of subject matter jurisdiction are ordinarily without prejudice because dismissal for lack of jurisdiction is typically not an adjudication on the merits.” Abate v. Fremont Inv. & Loan, 470 Mass. 821, 836 (2015); accord Bevilacqua v. Roberts, 460 Mass. 762, 779–780 (2011).
3.1. Garmon Preemption of the Interference and Chapter 93A Claims. ARCO’s claims for tortious interference and violation of G.L. c. 93A must be dismissed because they are preempted by Federal law.
The Supreme Court has long held that, “[w]hen an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board.” San Diego Building Trades Council v. Garmon, 359 U.S. 236, 245 (1959). “Under Garmon, States cannot regulate conduct ‘that the NLRA protects, prohibits, or arguably
 
                                                            -7-
 
protects or prohibits.’ ” Glacier Northwest, Inc. v. International Brotherhood of Teamsters Local Union No. 174, 598 U.S. 771, 776 (2023), quoting Wisconsin Dept. of Industry v. Gould Inc., 475 U.S. 282, 286 (1986).
Garmon preemption is much broader than the normal constitutional rule of federal preemption. Under the Supremacy Clause of the United States Constitution (U.S. Const. Art. VI, cl. 2), “federal law preempts state law when the two conflict.” Glacier Northwest, supra. “Preemption under the NLRA is unusual,” and goes further than the Supremacy Clause, because “the NLRA preempts state law even when the two only arguably conflict.” Id. (emphasis in original).
“Nevertheless, case law long has recognized some exceptions to that sweep.” Int’l Longshoremen, 104 Mass. App. Ct. at 37. “Garmon preemption does not preclude claims that are based on conduct that was ‘merely a peripheral concern of the [NLRA] … [or] touched interests so deeply rooted in local feeling and responsibility that, in absence of compelling congressional direction, [the Court] could not infer that Congress had deprived the States of the power to act.’ ” Id. (bracketed  material  in  original),  quoting  Garmon,  359 U.S. at 243–244.
Here, ARCO’s interference claims and its c. 93A claim are preempted by federal law because the Union’s conduct in threatening and pressuring ARCO’s clients and potential clients, undertaken in an alleged attempt to convince them not to do business with ARCO, is arguably prohibited by § 8(b)(4) of the NLRA. See Smart v. Local 702 Intern. Brotherhood of Elec. Workers, 562 F.3d 798, 804 (7th Cir. 2009) (state antitrust claim, based on allegations that a IBEW local threatened to have union electricians withhold work if project owner continued to use services of a non-union electrician, was preempted for this reason); American Steel Erectors, Inc. v. Local Union No. 7, Int’l Ass’n of Bridge, Structural, Ornamental & Reinforcing Iron Workers, 536 F.3d 68, 85 (1st Cir. 2008) (state law claims for tortious interference with contractual and advantageous economic relations and for violation of G.L. c. 93A, based on allegations that union used subsidies, threats, and picketing to pressure third-parties to breach contracts with plaintiff, were preempted for this reason).
Section 8(b)(4) prohibits, among other things, all attempts by a labor organization “to threaten, coerce, or restrain any person engaged in commerce” with the aim of “forcing or requiring” them “to cease doing business with any other person.” 29 U.S.C. § 158(b)(4)(B). A threat by a labor union to picket or otherwise pressure one company unless it agrees to stop doing business with
 
                                                            -8-
 
another is a “classic description of coercion within the labor law context” that violates § 8(b)(4). Intercity Maintenance Co. v. Local 254, Service Employees Intern. Union AFL-CIO, 241 F.3d 82, 87 (1st Cir. 2001).
ARCO’s  argument  that  the  Union’s  activity  does  not  arguably  implicate § 8(b)(4) because it did not concern wages, benefits, or other “labor-related matters” is without merit. Section 8(b)(4) applies to any secondary boycott, even if motivated by social or political issues rather than more traditional labor issues. See International Longshoremen’s Ass’n, AFL-CIO v. Allied Int’l, Inc., 456 U.S. 212, 223–224 (1982) (section 8(b)(4) applied to boycott of cargoes bound to or from Soviet Union undertaken in protest of USSR’s invasion of Afghanistan).
ARCO’s claims that the Union threatened and coerced third parties in order to compel them to stop doing business with ARCO do not “sufficiently implicate interests ‘so deeply rooted in local feeling and responsibility’ or of ‘peripheral or collateral concern’ to federal labor laws so as to except them from federal pre-emption.” American Steel Erectors, 536 F.3d at 85. The union conduct challenged in this case “may be prohibited rather than protected by the NLRA, but either way it is well within the regulatory purview of federal labor law rather than that of state police power,” so that these claims are “pre-empted by federal labor law.” Id.
Finally, ARCO’s assertion that these claims are not preempted because the complaint plausibly alleges that the interference and c. 93A violation were carried out through libel made with actual malice—see Tosti v. Ayik, 386 Mass. 721, 726–729 (1982)—is without merit for the reasons discussed below.
3.2. Defamation Claim. ARCO’s claim that the Union published defamatory written statements fails for two, independent reasons.
3.2.1. No False Statements. The claim for libel fails as a matter of law because the allegations in ARCO’s complaint do not plausibly suggest that the Union made any false statement of fact.
To state a viable claim for defamation, ARCO must allege facts plausibly suggesting that (1) the Defendants “published a defamatory statement” about ARCO, (2) “the statement was a false statement of fact (as opposed to opinion)”, (3) Defendants were “at fault for making the statement and any privilege that may have attached was abused,” and (4) either ARCO suffered damages as a result, “or the statement was of the type that is actionable without proof of economic loss.” Sullivan v. Superintendent, Massachusetts Correctional Institution- Shirley, 101 Mass. App. Ct. 766, 775 (2022), quoting Downey v. Chutehall Const.
 
                                                            -9-
 
Co., Ltd., 86 Mass. App. Ct. 660, 663 (2014). “A statement that is claimed to be defamatory must reasonably be understood either as a statement of actual fact, or one that implies defamatory facts.” Id., quoting Kelleher v. Lowell Gen. Hosp., 98 Mass. App. Ct. 49, 53 (2020).
The challenged leaflet makes only a few explicit or implicit statements of fact: that the person identified in the leaflet is a “principal” at ARCO, and that this person’s Facebook page still displayed the posts copied into the leaflet.
ARCO does not contend that these assertions were false. It acknowledges that the person in question is a vice president of ARCO and manager of its New England Region office. A layperson might fairly describe a corporate officer who manages an important part of the company’s business as a “principal” officer. Cf. G.L. c. 184, § 24 (referring to “the authority of a person signing for a corporation who purports to be the president or treasurer or a principal officer of the corporation”). And ARCO does not allege that the named employee never made the posts copied in the leaflet, or that those posts were no longer visible on the employee’s Facebook page when the leaflet was published.
Instead, ARCO alleges in its complaint that the Union’s leaflet “creates the false and misleading impression that [the employee’s] alleged social media posts in 2010 and 2011 were made, endorsed by, or are otherwise in any way associated with ARCO.” It similarly argues in its memoranda that the Union’s statements are false because “the social media posts are not attributable to ARCO,” since the employee “was not associated with ARCO until 2015, and … ARCO does not condone the content of the posts.”[8]
To the extent ARCO contends that the Union did something to suggest that ARCO “made” the Facebook posts, the defamation claim fails because “a reasonable reader could only have understood” the leaflet as copying the employee’s personal posts. Cf. King v. Globe Newspaper Co., 400 Mass. 705, 714 (1987) (defamation claim based on their that defendant falsely attributed discrediting statements to plaintiff failed as a matter of law because any such reading “would have been unreasonable”). Since the leaflet repeats the employee’s name at the top of each of the copied series of posts, the only reasonable inference is that the employee—and not ARCO—is the one who made each statement.
 
--------------------------------------------
 
[8] Rather than submit a single memorandum of opposition to both Rule 12(b)(6) motions to dismiss, ARCO chose to submit two separate but essentially identical oppositions.
 
                                                            -10-
 
To the extent that this claim is based on the allegation that the Union was suggesting that ARCO approved of (“endorsed”) or tolerated (“condoned”) the allegedly offensive posts, those are mere opinions. “A statement that does not contain ‘objectively verifiable facts’ ” cannot support a claim for defamation. Scholz v. Delp, 473 Mass. 242, 250 (2015), cert. denied, 578 U.S. 1023 (2016), quoting Levinsky’s, Inc. v. Wal-Mart Stores, Inc., 127 F.3d 122, 127 (1st Cir. 1997). Whether a statement unambiguously is one of fact or opinion is a question of law that the court may answer in deciding a motion to dismiss. See Myers v. Boston Magazine Co., Inc., 380 Mass. 336, 339-340 (1980).
The complaint does not allege that the Union falsely asserted that ARCO made some statement in which it explicitly approved of these posts, or that the Union falsely asserted some similarly verifiable fact. Instead, ARCO contends that the Union is suggesting that ARCO must be tolerating the employee’s posts because it made no attempt to disavow them once after they came to light.
The implicit suggestion that inaction by ARCO amounts to tolerance of its employee’s Facebook posts is merely an opinion, not a statement of fact that can give rise to a defamation claim. ARCO believes that it is unfair for the Union to infer or suggest that since ARCO has not publicly and explicitly disavowed its employee’s Facebook posts then it must condone or tolerate them. But “an opinion ‘based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified or unreasonable the opinion may be or how derogatory it is.’ ” Scholz, 473 Mass. at 253, quoting Dulgarian v. Stone, 420 Mass. 843, 850 (1995).
“Statements of fact may expose their authors or publishers to liability for defamation, but statements of pure opinion cannot. Statements of pure opinion are constitutionally protected.” King, 400 Mass. at 708. “Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas.” Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-340 (1974).
In context, it is plain that the Union’s implicit suggestion that ARCO seemed to be condoning or tolerating its employee’s old Facebook posts “could not have been understood by a reasonable reader to have been anything but … ‘an interpretation, a theory, conjecture, or surmise,’ ” and therefore is “ ’not actionable.’ ” Lawless v. Estrella, 99 Mass. App. Ct. 16, 22 (2020), quoting Scholz, 473 Mass. at 251.
 
                                                            -11-
 
3.2.2. No Actual Malice. Even if the Union’s suggestion that ARCO condoned or tolerated its employee’s Facebook posts were a statement of fact (which it is not), ARCO’s libel claim would still fail because the Union made its statements in the context of a labor dispute, the claim for defamation is preempted by the NLRA unless the alleged false statement was made with actual malice, and the factual allegations in the complaint do not plausibly suggest that the Union knew that this suggestion was false or recklessly disregarded its truth or falsity.
“Federal law preempts State libel law to the extent that defamatory statements made in the context of a labor dispute are actionable only if made with knowledge of their falsity or with reckless disregard of the truth,” i.e. with “actual malice.” Tosti, 386 Mass. at 723. Compensation for publishing a defamatory statement “with knowledge of its falsity, or with reckless disregarding of whether it is true or false,” is merely a peripheral concern of the NLRA, and therefore State law claims seeking such compensation are not preempted by the Act. Linn v. United Plant Guard Workers of America, Local 114, 383 U.S. 53, 61 (1966); accord Farmer v. United Brotherhood of Carpenters and Joiners of America, Local 25, 430 U.S. 290, 298–299 (1977) (discussing Linn). However, state libel claims based on “defamatory statements in labor disputes” that were not made with such knowledge or recklessness are “pre-empted by the federal labor laws.” Old Dominion Branch No. 496, Nat’l Ass’n of Letter Carriers, AFL-CIO v. Austin, 418 U.S. 264, 273 (1974).
For this purpose, “[t]he term ‘labor dispute’ should be broadly and liberally construed.” Tosti, 386 Mass. at 723. “Where the union acts for some arguably job-related reason and not out of pure social or political concerns, a 'labor dispute’ exists.” Tosti, 386 Mass. at 723, quoting Hasbrouck v. Sheet Metal Workers Local 232, 586 F.2d 691, 694 n.3 (9th Cir. 1978).
If a labor union sends letters or leaflets to a target company’s customers in an attempt to create “economic pressure,” in order to seek gains for the union’s members, statements in the letters or leaflets occur “in the context of a labor dispute” and a defamation claim based on those statements requires proof of actual malice. See Aarco, Inc. v. Baynes, 391 Mass. 560, 562–563 (1984).
The allegations of the complaint, especially when read in the context of ARCO’s unfair labor practice complaints to NLRB, make clear that is what was happening in this case, and therefore that the Union’s allegedly defamatory statements were all published in the context of a labor dispute. Local 175 sent its initial letter, with one version of the challenged leaflet, to ARCO’s NLRB counsel just 17 days after ARCO filed its first unfair labor practices charge
 
                                                            -12-
 
against Local 175 at the NLRB. When Mr. Gagliardi directly contacted executives at one ARCO client less than two weeks later, he made clear that the Union was trying to pressure ARCO to change certain “work practices” and cease alleged “wage violations.” Four days after Gagliardi sent this email, ARCO filed a second charge against Local 175 with the NLRB. Considering these events as a whole, it is apparent that the Union was acting at least in part “for some arguably job-related reason.” See Tosti, 386 Mass. at 723.
The factual allegations in the complaint do not suggest that the Union acted with actual malice, because they do not suggest either that the Union knew ARCO did not condone or tolerate its employee’s Facebook posts, or that it recklessly disregarded whether any suggestion as to condoning or tolerating was true or false. To the contrary, the complaint alleges that Local 175 wrote to ARCO about these posts and implies that ARCO never responded to the Union in any way, other than to file this lawsuit. ARCO could have responded to this inquiry by disavowing these posts. But the complaint makes no allegation that ARCO has ever done so.
Since the circumstances alleged in the complaint do not support any inference that the Local 175, Gagliardi, or Local 22 acted with actual malice, ARCO’s libel claim fails as a matter of law. See Aarco, 391 Mass. at 564–565 (affirming summary judgment because circumstances presented in evidentiary record did not support inference of actual malice).
ARCO’s conclusory assertion that “Defendants knew their statements were false at the time Defendants made them” does not suffice to state a claim, as it finds no support in the facts that are actually alleged in the complaint. In deciding the motions to dismiss, the Court must “look beyond the conclusory allegations in the complaint and focus on whether the factual allegations plausibly suggest an entitlement to relief.” Maling v. Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, 473 Mass. 336, 339 (2015), quoting Curtis v. Herb Chambers I–95, Inc., 458 Mass. 674, 676 (2011). “While ‘detailed factual allegations’ are not required at the pleading stage, mere ‘labels and conclusions’ will not survive a motion to dismiss.” Burbank Apartments Tenant Ass’n v. Kargman, 474 Mass. 107, 116 (2016), quoting Iannacchino, 451 Mass. at 636.
In sum, even if ARCO had alleged that the Union made false statements of fact, rather than non-actionable implicit statements of opinion, the defamation claim would still have to be dismissed be dismissed (albeit without prejudice) because actual malice is an element of this claim and ARCO “alleges no facts
 
                                                            -13-
 
that could support a finding of knowing falsehood or reckless disregard for truth or falsity.” Sullivan, 101 Mass. App. Ct. at 779.
ORDER
The special motion by Laborers’ International Union of  North  America  Local 175 and Michael P. Gagliardi under G.L. c. 231, § 59H, to dismiss the complaint to the extent it is based on communications with municipal leaders and employees (doc. no. 26) is denied.
The motions by Laborers’ International Union of North America Local 22 (doc. no. 18) and by Laborers’ International Union of North America Local 175 and Michael P. Gagliardi (doc. no. 22) to dismiss this action pursuant to Mass. R. Civ. P. 12(b)(6) are allowed.
Final judgment shall enter dismissing the defamation claim in count III with prejudice and dismissing counts I, II, and IV without prejudice.